MOHLER v. CARDER ET AL.

1. **False Representations:** CONVEYANCE INDUCED BY: RESCISSION IN EQUITY. To entitle a party to relief in equity on the ground of fraudulent representations, it is not necessary that it be shown that the party making the false statements knew them to be false when he made them; for, however innocently made, if represented as positive statements of fact, as distinguished from mere opinions, and relied on by the other party to his prejudice to the extent that he is led to act thereon, equity will afford relief; (*Wilcox v. Iowa Wesleyan University*, 32 Iowa, 367;) and in this case, where it clearly appears that plaintiff was led by the false representations of the defendants to exchange real estate with them, and in an action to rescind the contract he tendered to them a reconveyance of the land which they had deeded to him, *held* that the court properly annulled the contract and ordered a reconveyance by the defendants.

*Appeal from Marion District Court*—HON. A. W. WILKINSON, Judge.

TUESDAY, DECEMBER 20.

THIS is an action in equity by which the plaintiff seeks to rescind and set aside a conveyance of certain real estate made to the defendants, upon the ground that said conveyance was procured by false and fraudulent representations, made by the defendant Horton Carder. There was a decree for the plaintiff, and defendants appeal.

*Whiting S. Clark*, for appellants.

*Stone & Gamble*, for appellee.

ROTHROCK, J.—The plaintiff was the owner of a grist-mill, saw-mill, house and 14 acres of land, in Marion county. Being somewhat advanced in years, he desired to dispose of said property. In February, 1886, he advertised it for sale by a notice in a newspaper. The defendants are husband and wife, and at that time, and for a year previous thereto, they resided in Sioux county. Before that, and for some 12 years, they lived at Garden Grove, in Decatur county. The

defendant, H. M. Carder, wife of Horton Carder, was the owner of 100 acres of land in Decatur county, and a house and lot in Garden Grove. Horton Carder saw the plaintiff's newspaper advertisement, and on March 1, 1886, he addressed a letter to the plaintiff, proposing to exchange the Decatur land for the mill property. This opened up a correspondence by letter between the parties, which continued until about the 1st of June, 1886, at which time the defendant, Horton Carder, went to the residence of the plaintiff, and looked over and examined the mill property, and on the next day the parties went to a justice of the peace, and the plaintiff conveyed his mill property to the defendants, and they conveyed the 100 acres of land, and the house and lot in Garden Grove, to plaintiff. The plaintiff claims that the defendant, Horton Carder, misrepresented the character, quality, location and value of the land, and of the house and lot; that he was deceived and misled by these misrepresentations, and induced thereby to enter into the trade, to his great damage. He exhibited with the petition, and tendered to the defendants, a reconveyance of the Decatur county property, and demanded a reconveyance of the mill property.

There is no disputed proposition of law in the case, so far as the rights of the parties are concerned, upon the merits. The questions of law involved in a proceeding of this character are so well settled that there is no ground for debate as to them. The main question is, has the plaintiff established the averments of the petition (or such of them as are necessary to be established) by clear and satisfactory evidence? (McClanahan v. McKinley, 52 Iowa, 222; Dirkson v. Knox, 71 Id., 728.) Another equally well-established rule is that, to entitle a party to relief in equity by reason of fraudulent misrepresentations, it is not necessary that it be shown that the party making the false statements knew they were false when he made them. They may have been innocently made, yet if represented as positive statements of fact, as distinguished from mere opinions, and relied upon by the other

party to his prejudice to the extent that he is led to act thereon, equity will afford relief. (*Wilcox v. Iowa Wesleyan University*, 32 Iowa, 367.) Applying these familiar rules to the evidence in the case, we concur with the district court in holding that the contract between these parties should be rescinded. A number of letters were offered in evidence, written by the defendant Horton Carder to the plaintiff. These letters appear to be one side of the correspondence between the parties. There was a copy of but one letter written by plaintiff to the defendant. All of these letters, which led up to the final consummation of the contract, were excluded by the court. Counsel for the defendants contend that they should have been admitted. We concur in that proposition, and, in reaching a conclusion, we have given all of the letters, as well as the parol evidence, a careful consideration.

Counsel for appellants strenuously contends that the letter written by the plaintiff on the 2d day of May, 1886, closed the contract between the parties, and that no consideration should be given to certain alleged false representations made at the plaintiff's house on the day before the deeds were exchanged. It is true that in that letter the plaintiff used this language:

"I think we will deal on the square. Now, when you get this, and read it over carefully, then you can arrange the details of fixing up papers, and write at once. If you have to have the house immediately, I will try and get one to move in. I have 3 or 4 days' sawing that I must do, as I have yet to saw, and must do the work. Now, Mr. Carder, don't think, because I am so generous, I am sick, or anything of that kind; I am hard run only. Think of an old man that has been laid up at least half his time for five years, and you will see my condition, and I would sell cheaper than any other man, though I did not say I would trade for land at too high figures. Still, I will say this is a trade, though a hard one for me. I wrote Mr. Stearns, and he said, if the land was in better

shape, it would be worth ten dollars per acre. He said he paid eight dollars for his, and gave three to have it brushed off, and now held it at fifteen dollars; said your land was good grass land, and had good water. I suppose, by what he said, it was brushy. Be that as it may, I hope I can get something out of it. I shan't take time to go and look, but take your word for it." He further stated as follows: "But enough of this. What I want to say is that we are going to trade. I feel sure, if you was here, you would offer at least $500 difference; and so sure am I that you will do it when you see my place. But I will say that I will leave that part entirely with you, and call it a trade; and when you see my place, if you don't say I am entitled to $500, I will say nothing, for your talk seems square, and I have that much confidence in mankind yet that I am willing to risk it on you. I will say that if you need time, and think you ought to pay any difference, you can have what time you want."

It will be observed from these extracts from the letter that, while the plaintiff said he would trade, he also said he should not take the time to go and look at defendant's property, but would take his word for it. That the parties did not then regard the bargain as closed is made plain by the fact that, when the defendant went to the plaintiff's place, he carefully examined the mill property, and, while doing so, he was fully interrogated by plaintiff as to the character, quality and location of the Decatur county property. The evidence makes it quite plain to us that he then misrepresented his property in many material respects, and that the plaintiff made the deed by reason of said misrepresentations, and relying thereon. In the course of the correspondence, the defendant referred the plaintiff to one Stearns, who resided in Decatur county, for information about the land and house and lot. Plaintiff wrote a letter of inquiry to Stearns, and received a reply. Neither the letter nor the reply was introduced in evidence. The defendants introduced Stearns as a witness to testify to the contents of the reply. It is insisted, on behalf of the defend-

ants, that the evidence of Stearns, and other facts and circumstances in the case, show that the plaintiff was not justified in relying upon the representations made by the defendant. We do not think this position is well taken. The evidence of Stearns shows that his letter to the plaintiff was very general in its character. Indeed, the witness does not appear to be positive as to the contents of his letter. A careful examination of all the evidence leads the mind to the conclusion that the plaintiff placed implicit confidence in Carder. The extracts we have given from his letter make this plain; and we think in view of this fact, of which Carder was well advised, he cannot be allowed to escape the consequences of having made statements which, to say the least, he did not know to be true. That they were material can admit of no question. It is true, the property consisted of 100 acres of land and a house and lot. He did not misrepresent the quantity of land, nor the size of the lot; but as to the quality and location of the land, and the improvements on the lot, he made very material misrepresentations, which we need not here repeat. There is no escape from the conclusion that, if he had told the plaintiff the truth about his property, the deed would not have been made.

AFFIRMED.