F. M. HUNTER, Appellant, v. THE FRENCH LEAGUE SAFETY CURE COMPANY OF SIOUX CITY, IOWA, GEORGE W. KINGSNORTH, J. M. CAMPBELL, WILLIAM DAVIS AND E. C. PALMER.

| | |
|---|---|
| 96 | 573 |
| 113 | 468 |
| 96 | 573 |
| 118 | 732 |
| 96 | 573 |
| 132 | 279 |

**Fraudulent Representation:** EQUITY.   Equity will afford relief from
1   a contract which a party was induced to make through misrep-
2   resentations made by the other party as positive statements of fact, although they were innocently made.

**Settlement:** FRAUD.   The fact that one who was fraudulently induced
3   to subscribe for stock settles with the promoters of the corpora-
4   tion for a conversion of the money paid by him, knowing of the conversion, does not affect his right to rescind on account of false representations made to induce him to subscribe, he having no knowledge that the representations were false when he made said settlement.

Deemer, J., took no part.

*Appeal from Pottawattamie District Court.*—HON. H. E. DEEMER, Judge.

WEDNESDAY, JANUARY 22, 1896.

Action in equity to rescind and cancel a certain contract for shares of the capital stock in the defendant company on the ground of fraud, and for judgment against the defendants for five thousand dollars paid for said stock, with interest.   Defendants answered, in effect, denying generally the allegations of fraud and alleging a settlement whereby plaintiff is estopped from maintaining this action.   Plaintiff replied, denying each allegation of the answer.   The case was tried to the court, and a decree rendered

finding the fraud alleged, and also finding that, after acquiring knowledge of the fraud plaintiff was guilty of laches, and acquiesced therein to such an extent as to preclude him from exercising the right of rescission and from relief in a court of equity, wherefore his bill was dismissed.    Plaintiff appeals. — *Reversed.*

*Harl & McCabe, John Y. Stone, W. H. C. Jaques,* and *J. C. Mitchell* for appellant.

*Wright & Baldwin, A. W. Askwith, John P. Organ, Jonas M. Cleland,* and *John Wallace* for appellees.

Given, J.—I.    This case and the case of one C. C. Cook against the same defendants were submitted together in the district court, a great part of the evidence being alike applicable to both cases. The evidence as to both is so blended that it was impracticable to separate it in making the abstracts, but we have eliminated from consideration all that which relates exclusively to the case of Cook, as that case is not before us. There is but little, if any, controversy as to the law applicable to this case, and the contentions may be reduced to two inquiries, namely, whether the plaintiff has so established his allegations of fraud as to be entitled to relief, and whether the defendants have so established their defense of estoppel as to defeat plaintiff's right to relief. Plaintiff's cause of action is stated in a lengthy petition, and in several amendments thereto, the material parts of which are, in substance, as follows: He alleges that said personal defendants, acting as promoters of, and engaged in the preliminary steps for the organization of, the defendant company, and for the purpose of inducing plaintiff to take and pay for stock in said corporation, represented and caused to be represented

to him as follows: That distinguished and scientific
French physicians, as a result of years of investi-
gation, discovered a formula of great efficacy in the
cure of drunkenness; that said remedy had been tested
by an experience of eleven years under control of the
French League in France; that records of cases and
cures were reported to the register general in France,
sworn to, which records showed the great efficacy of
the treatment; that said remedy was a secret, known
only to the discoverer, and entirely unknown in the
United States, except to said defendants; that they
had bought and paid for said remedy the sum of fifty
thousand dollars, and were the sole owners in the
United States of said remedy, and had the sole right to
use the same therein; that said defendants proposed to
plaintiff to sell to him and said Cook, for five thousand
dollars each, one-fifth of the stock in said company, the
said company to be organized upon a basis of a capital
of five hundred thousand dollars; that said defendants
further represented that they had subscribed for the
balance of said stock, and paid therefor forty thousand
dollars in cash, thus making a paid-up capital of fifty
thousand dollars in cash, and that said remedy would
be assigned and sold by them to the company without
any further consideration therefor; that, relying upon
said representations, the plaintiff did subscribe for five
hundred shares of said stock, and paid to the defend-
ants therefor five thousand dollars in cash, receiving
certificates Nos. 6, 24, 26, and 28. Plaintiff alleges that
said representations were false and fraudulent, and
known to be such by the defendants at the time they
were made. He alleges that neither of said personal
defendants had subscribed or paid for stock; that they
had not paid any consideration for the stock issued to
them; that at the time plaintiff and Cook paid said ten
thousand dollars it was not the intention of the
defendant persons that said money should go into the

treasury of the company, but that it should be secretly taken and divided among them; and that it was divided, and was not used to pay for the said pretended formula. Plaintiff further alleges that at the time of receiving said money said personal defendants were acting as promoters and officers of said corporation, and thereby became the trustees of the plaintiff for the disposition of said money, and still hold the same in that capacity. Plaintiff prays for a decree rescinding his subscription for said stock and canceling the contract by which the same was sold to him; that the defendants be decreed trustees of plaintiff as to said money; that they be ordered to pay over the same to plaintiff, and that he have judgment against the defendants for the said sum of five thousand dollars, with interest.

Defendants answered, denying every allegation in the petition and amendments thereto, and alleging as follows: That at the time of purchasing said stock the plaintiff knew the nature of the enterprise and of the remedy; that he waived his right to bring this action, for the reason that with knowledge of the facts he made a complete settlement of all matters relating thereto on the twelfth of July, 1892, and affirmed the contract of the purchase of said stock, "and because of his failure to revoke said contract;" that because of said full and final settlement defendants had "expended large sums of money and incurred personal obligations, by reason whereof plaintiff is barred and estopped from maintaining this action, and waived the right of recission of the purchase of said stock and to sue for return of the money."

II. Upon both the issue of fraud and of estoppel the evidence is so voluminous that it cannot be set out in detail within the proper limits of an opinion. It will

be sufficient, however, that we state in general terms our conclusions upon the controlling questions presented. We are in no doubt but that the defendant Campbell, to induce the plaintiff to join in this enterprise, repeatedly made representations to him, substantially as alleged concerning the origin, tests, and efficacy and cost of the cure, and that it was a secret. We are equally satisfied that defendants Campbell, Kingsnorth, and Davis made similar representations to C. C. Cook, with the expectation and intention that they would be communicated to the plaintiff, and for the purpose of influencing the plaintiff and said Cook to take stock in the corporation. It does not appear that the defendant Palmer ever made any of the said representations, but we think it does fairly appear that he and all of the defendants knew that such representations were being made for the purpose of influencing the plaintiff, and that they approved and ratified the making thereof. That said representations were made to induce the plaintiff to take and pay five thousand dollars in cash for stock in said corporation cannot be questioned. As to the truth of said representations, it clearly appears that there was not one syllable of truth therein, unless it be as to the efficacy of the cure, upon which the defendants were acting. It was not a new or secret remedy, but one known for a long time to many physicians, and which, according to the testimony of persons treated by the defendant corporation, appears to have some value as a remedy. It is conceded that the defendant Davis, who is a physician, prepared this formula, and that it had not originated, had not been tested, and had not been purchased as represented. Davis knew that the representations were false, and, although the other defendants deny that they had such knowledge, we think their own

statements show that they did not believe the representations to be true. In *Mohler v. Carder,* 73 Iowa, 582 (35 N. W. Rep. 647), it is said: "Another equally well established rule is that, to entitle a party to relief in equity by reason of fraudulent misrepresentations, it is not necessary that it be shown that the party making the false statements knew that they were false when he made them. They may have been innocently made, yet, if represented as positive statements of fact, as distinguished from mere opinions, and relied upon by the other party to his prejudice to the extent that he is led to act hereon, equity will afford relief." Applying this rule, the plaintiff is entitled to relief, though the defendants other than Davis did not, at the time, know of the falsity of said representations.

The charge that said personal defendants falsely represented that they had subscribed and paid fifty thousand dollars in cash for the stock in said corporation other than that to be issued to Cook and the plaintiff is, we think, fully established. It does appear that said defendants had each for himself purchased from Davis an interest in the formula, and had paid him therefor partly in cash and partly in property of uncertain value. As the cure was the basis of the organization of the corporation, it may be said that by reason of these purchases the defendants were entitled to stock as stated upon transferring the formula to the corporation; but it was not true, as stated, that they had paid fifty thousand dollars in cash to the corporation for said stock. There can be no doubt but that the representation that fifty thousand dollars in cash had been paid for this stock was known to be false, and was made to induce the plaintiff to take the stock he did.

It is contended on behalf of defendants that plaintiff was not a subscriber to the stock of the company, but that he was a purchaser of stock from said personal defendants, and that, therefore, they had the right to retain and divide among themselves the five thousand dollars paid by him, as well as that paid by Cook; while plaintiff contends that he was the subscriber to the company for stock, and that the ten thousand dollars should have gone into the treasury of the company. Upon this contention we think the weight of the evidence is with the plaintiff. Plaintiff did not contract for an interest in the cure, nor was such an interest ever transferred to him. He contracted for stock in the corporation, and it was certificates of stock that were delivered to him in return for his five thousand dollars. That money belonged to the corporation, and the defendants had no right to appropriate it to their individual use as they did. If by reason of their ownership in the formula they were entitled to compensation for the transfer thereof, it was from the corporation to which they transferred it, and not from individual stockholders thereof.

Without further discussion on this branch of the case, we will say that under the record before us the conclusion is irresistible that this scheme was a base fraud, designed to deceive whoever might deal with the corporation for stock, territory, or treatment, and that the fraud was participated in actively or passively by all the defendants. In the case of this plaintiff the fraudulent scheme accomplished its intended purpose, as thereby he was induced to pay the five thousand dollars, which we think was not only fraudulently obtained, but wrongfully converted, by the defendants, who at the time were acting as officers of the corporation.

III. The affirmative defense pleaded by the defendants is not very clearly stated, but, as we understand the pleadings, the claim is that the plaintiff is estopped from maintaining this action for two reasons, namely: *First.* That on the twelfth day of July, 1892, the plaintiff, with knowledge of the facts and circumstances touching the matters complained of, made a complete and final settlement with the defendants of the differences existing between them; and that the defendants, relying thereon, spent large sums of money and incurred personal obligations. *Second.* That plaintiff, with such knowledge, on the said twelfth day of July, 1892, affirmed his contract of purchase of said stock, and waived his right to rescind the same, and that defendants relying thereon, afterwards expended large sums of money, and incurred personal obligations. Plaintiff denies that there was any settlement, and denies that he waived his right to rescind said contract. These inquiries render it necessary that we determine what knowledge the plaintiff had on July 12, 1892, as to the truth or falsity of the representations complained of. He concedes that recently theretofore he had learned that money paid by Cook and himself had not been put into the treasury of the company, but had been divided among the defendants. It was because of this information that he became dissatisfied, and the meeting on July twelfth was called to consider his complaints and those of Cook, who was also dissatisfied. Plaintiff testifies that at the time he did not have knowledge of the falsity of the representations concerning the cure, and there is no direct evidence that he then had knowledge that such representations were false. There is evidence tending to show quite strongly that prior to that date Cook became informed of the facts concerning the cure.

The defendant's contention is that in all these transactions Cook was authorized to and did act for the plaintiff, and that plaintiff is therefore bound by the knowledge that Cook had.   We do not think the record sustains this claim of the defendants.   It is true that the plaintiff and Cook took and paid for the same amount of stock upon the same conditions and under quite similar circumstances, and that they acted together to some extent throughout the transaction.   It is true that plaintiff paid two thousand seven hundred and thirty dollars on his stock to Cook as secretary of the company at Council Bluffs, and at the same time signed the articles of incorporation as one of the incorporators.   We do not think, however, that it is shown that Cook had any authority from the plaintiff to act for him, but only that because of the circumstances they acted largely together in the matter.   It certainly does not appear that Cook had any authority to act for the plaintiff in the matter of rescinding or not rescinding the contract, or in settling the differences with the defendants.   All that plaintiff knew on the twelfth concerning the matters complained of was that his money had been appropriated by the personal defendants to their own use.   There is no doubt but that his complaints because of this were the subject of discussion at the meeting that day, and of an effort to effect a settlement; but it is clear that no settlement was accomplished, as neither party was willing to accept the terms proposed by the other.   Even if plaintiff had consented to the terms of settlement proposed by defendants, it would not estop him from maintaining this action, inasmuch as at that time he did not know of the falsity of the representations made to him concerning the cure.

IV.   Prior to July twelfth the defendants had entered into negotiations for the sale of the right to

use this remedy in several different parts of the country, and the terms of settlement discussed had in view the repayment to the plaintiff of his money out of the proceeds to be derived from the sale of territory. Defendants contend that the failure to effect a settlement "was on account of the plaintiff and Cook announcing their decision to retain their interest in the company, upon condition that Cook should have exclusive control of the medical department of the institute, and Cook and Hunter should have the right to sell the furniture and lease of the institute, and that Cook should be allowed to go to Worthington, and close the deal there, together with some other minor conditions to which the defendants acceded with the understanding that this should end all the troubles and disagreements between plaintiff and Cook and these defendants." The evidence tends quite strongly to sustain this claim as to Cook, but we think fails to sustain it as to the plaintiff. While the evidence is conflicting on this subject, we think the fact that plaintiff, immediately upon his return from Sioux City to his home in Council Bluffs, took steps to institute this suit, goes far to corroborate him in his denial of this claim of defendants. But, even if he had then consented, as claimed, we have seen that he had not as yet learned the falsity of the representations made to him concerning the cure, but was complaining solely upon the ground of the misappropriation of his money. If plaintiff had made a settlement as alleged, or if he had consented to waive his right to rescind the contract and to remain in the enterprise, not then knowing of the falsity of the representations made to him concerning the cure, he had the right thereafter, upon learning of the falsity of said representations, to rescind the contract and recover back his money. These considerations dispose of all the material contentions in the case, and lead

us to the conclusion that the plaintiff is entitled to judgment against the defendants for five thousand dollars, with interest from July 12, 1892, and for costs.

The death of the defendant E. C. Palmer pending this appeal having been suggested and his administrator made a party defendant, the judgment will be rendered accordingly.—*Reversed.*

Deemer, J., took no part.