ROBERT J. MOYLE, Appellant, v. ISAAC SILBAUGH and B. F. JAQUES.

**Fraud:** RESCISSION. Where the owner of a patent right exhibited a model, and stated that the patent which he owns covers the machine exhibited, and, on the strength of the representation, sells the right to manufacture it, he may be enjoined from selling the notes given for that right, and the notes may be declared null and void, if an important device shown in the model is covered by another patent, and the purchaser cannot, for that reason, manufacture, under the right, the machine shown him.

*Appeal from Greene District Court.*—HON. Z. A. CHURCH,
Judge.

WEDNESDAY, MAY 18, 1898.

THE plaintiff purchased of the defendant Silbaugh
all his right, title, and interest in a certain invention,
with the right to use, manufacture, and sell in Minne-
sota, and, in consideration therefor, executed four notes
of five hundred dollars each. He seeks in this action to
enjoin the defendants from negotiating said notes, and
to have them brought into court and canceled. Decree
was entered for defendants, and plaintiff appeals.—
*Reversed.*

*Rose & Henderson* for appellant.

*Russell & Toliver* and *A. U. Quint* for appellees.

LADD, J.—Letters patent for an alleged new and
useful improvement in kitchen cabinets, known as the
"Cabinet Queen," were issued to John B. Cline and
Isaac Silbaugh on the nineteenth day of March, 1895.
The patentees apportioned the United States between
them; and, among other states, Pennsylvania, South
Dakota, and Minnesota fell to the lot of Silbaugh. The
latter is charged with inducing the plaintiff, by false
representations, to execute his notes for two thousand
dollars in compensation for an assignment of the terri-
tory included in Minnesota. Upon a careful examina-
tion of the evidence, we are convinced that the relief
prayed should be granted. Since the patent issued,
an improvement has been added. It seems that without
this the crank to the sifter must be removed before the
sieve can be taken out, and the flour reached. By the
use of a movable piece in the front of the drawer or bin,
and a change in fastening the shaft, flour can be more

conveniently obtained, and without unscrewing the crank. Cline testifies: "The improvement consists in placing this separable piece, attaching it to the sieve-frame front, and its extending down sufficiently to admit of the crank shaft passing through it, and a corresponding mutilation or opening of the drawer to admit of that being allowed to fit into it, that permits the lifting of the drawer of the sieve frame from the drawer without detaching the crank." As the model is not before us, we are unable to more fully describe the device. While the improvement does not appear to be very important, this may be said of the entire invention. That it was of such a character as to be valuable is established by the evidence. Cline so considered it, else he would not have applied for a patent. Silbaugh had been informed of this improvement, but not of Cline's action in the matter. In spite of this information he represented to Moyle that all parts of the Cabinet Queen were covered by letters patent. Whether he knew otherwise is not very material. *Wilcox v. University*, 32 Iowa, 368; *Mohler v. Carder*, 73 Iowa, 582. If he so falsely represented, and the purchase was induced thereby, this is sufficient. In *Meyers v. Funk*, 56 Iowa, 52, it is said: "We think it is not too stringent a rule to hold that one who purchases a patent right, which does not sell on its own merits, but requires the services of a traveling salesman, is entitled to the very invention and patent which he purchases, and nothing less." Even if the drawings and specifications were shown the plaintiff,—which he denies,—he had neither the time nor the opportunity to examine them. They were intricate and in detail, and required much attention to understand them. Besides Silbaugh knew he was making the purchase without such examination, and in reliance on his representations. See cases cited in 8 Am. & Eng. Enc. Law, 794. It may be that plaintiff

did not rely upon the protection of a patent as to any particular part. But it is clear that he would not have purchased it, had he not supposed the entire device or invention fully covered by the letters. We are the more content with our conclusion because of the hypocrisy and deceit practiced in making the sale. It seems that Silbaugh, B. F. Jaques, and Charles E. Dunnell deliberately arranged to "take in" Moyle, for whom Dunnell was working. Jaques induced Moyle to accompany him that he might get acquainted with Silbaugh and examine the invention, with a view of purchasing; and Dunnell went along. Ignorance of the way, even, was pretended, and inquiry made. Dunnell was to hang back, and finally agree to buy if Moyle would. When at Silbaugh's home, the model was examined; and, after considerable talk, Jaques proposed each buy a state, and related that at one time "he had sold Minnesota for ten thousand dollars, in a fumigating process," and this was a better thing. Dunnell inquired of Silbaugh what he would take for North and South Dakota and Minnesota, and the latter was finally argued down to seven thousand dollars. Jaques, who had been a near neighbor of the plaintiff, and in whom he reposed confidence, advised him the price was very low, but that he could get them cheaper. He finally suggested that plaintiff inquire of Silbaugh if he would take six thousand dollars, and make it even money. After substituting Pennsylvania for North Dakota, and granting the privilege of selling territory on a commission of fifty per cent., Silbaugh, with apparent reluctance, said he would take the price offered. Moyle remarked that, if he had any, he would want Minnesota; and, of course, the others desired the same state. Jaques proposed making each two thousand dollars and drawing therefor; and this was agreed to with the condition, on plaintiff's part, that the result should not be binding. Of course, the

plaintiff drew Minnesota. Silbaugh at once began preparing the assignments of territory, and insisted that, as Moyle had drawn what he wanted, he could not back out. Moyle executed notes for two thousand dollars, and in return received the right to use, manufacture and sell the Cabinet Queen throughout the state of Minnesota, but nowhere else. Similar assignments were made of Pennsylvania and South Dakota, and Jaques and Dunnell each executed notes for a like amount, though these were returned the following day. These sales and notes were sham, and mere pretenses to induce Moyle to make the purchase. If, as claimed, the defendants arranged to retain Pennsylvania and South Dakota, it was owing to an understanding and settlement of the next day. That these parties were acting as agents of Silbaugh, in dealing with Moyle, cannot be doubted, and as such, with his approval, were passing themselves as friends of plaintiff, upon whose judgment he could safely rely. The whole transaction deserves reprobation. It is all but incomprehensible that intelligent farmers, without facilities for manufacturing or selling, will persist in being swindled by peddlers of patent-right territory. The courts, however, must be astute in protecting the confiding and unwary, and in discovering just and tenable grounds for granting relief against all forms of fraud.—REVERSED.