ROBERT L. LEACH, State Superintendent of Banking, Appellee, v. CENTRAL TRUST COMPANY, Appellee; FIRST NATIONAL BANK OF MASON CITY, Appellant.

**BANKS AND BANKING:** Insolvency—Preference for Draft Fraudulently Procured. The drawer of a draft who receives in payment therefor a draft which the payee has no reasonable grounds to believe will be paid, may enforce an equitable preference against the receiver of the wrongdoer for the full amount of his (the drawer's) loss, it appearing that the draft issued by the said drawer has been paid and that the proceeds thereof are in the hands of the receiver.

Headnote 1: 7 C. J. p. 894 (Anno.)

*Appeal from Cerro Gordo District Court.*—C. H. KELLEY, Judge.

MAY 10, 1927.

A claim was filed by the First National Bank of Mason City against Leach, receiver of the Central Trust Company, claimant asking that the claim be allowed as preferred. The district court allowed it as a depositor's claim only, and the First National Bank appeals.—*Reversed.*

*Garfield E. Breese,* for appellant.

*Smith & Feeney,* for appellee.

ALBERT, J.—Both the Central Trust Company and the First National Bank were residents of Mason City, Iowa, at the time of the controversy. On the 27th day of March, 1924, the Central Trust Company was in financial distress. Its correspondent bank in Chicago was the Illinois Merchants Trust Company, and

against its account the Central Trust Company had drawn drafts in excess of the amount of its credit. To meet this situation, the Central Trust Company purchased from the First National Bank of Mason City a draft drawn by the First National and payable to the Central Trust Company, for $2,500. This draft was drawn by the First National Bank on its Chicago correspondent, the Continental & Commercial National Bank of Chicago. The Central Trust Company immediately forwarded this draft so purchased to its Chicago correspondent, the Illinois Merchants Trust Company, and the draft was cleared through the clearing house on its receipt, and the Illinois Merchants Trust Company received the proceeds therefrom. On the 28th day of March, 1924, Leach was appointed receiver of the Central Trust Company. He immediately advised all correspondents not to honor any outstanding drafts issued by the Central Trust Company, and on such notice the Illinois Merchants Trust Company had on hand to the credit of the Central Trust Company $5,768, which included the $2,500 received by it on the draft issued by the First National Bank of Mason City. The Illinois Merchants Trust Company later remitted to the receiver of the Central Trust Company in full. Thus the $2,500 represented by the draft issued by the First National Bank is now in the hands of the receiver of the Central Trust Company. To pay for the draft thus purchased by the Central Trust Company from the First National Bank, the Central Trust Company issued to the First National Bank a draft upon the Commercial National Bank of Waterloo. This draft was issued on March 27, 1924, and was never paid, although presented.

At the time the Central Trust Company issued the $2,500 draft to the First National Bank, drawn on the Commercial National Bank of Waterloo, the Central Trust Company did not have funds on deposit with the Waterloo bank to meet this draft. The question is whether, under this state of facts, the First National Bank of Mason City is entitled to have its claim allowed against the said receiver as a preferred claim.

The first question for determination is, What is the effect of the drawing and delivery of a draft? Does it carry with it any implications, and if so, what?

In the case of *Whitcomb v. Carpenter*, 134 Iowa 227, one Snyder, a private banker, was doing business under the name of

the "Bank of Olin." We had under consideration a case where the Bank of Olin had sold a draft when there were no funds in the correspondent bank on which it was drawn. In a discussion of this question we said:

"It is sufficient to say that the act of Snyder in taking the money of the plaintiff for the draft which he knew was worthless, and which he had no assurance would be honored when presented for payment, was as wrong in law as it was reprehensible in morals. The money was not given to him as a deposit, nor as a loan. He received it upon his expressed or implied representation that he had such moneys or credit with his Chicago correspondent that, upon presentation of the draft, a like sum would be paid to the plaintiff. That representation he knew to be untrue, and he must be held to have received the money wrongfully, and to hold it in trust for the person who paid it to him."

See, also, *Widman v. Kellogg,* 22 N. D. 396 (133 N. W. 1020).

It seems to be quite well settled that the drawing and delivery of a check or draft carry with them a representation that the drawer has funds or credits in the bank against which it is drawn. That this is the rule in criminal cases, see *Commonwealth v. Wallace,* 114 Pa. St. 405 (6 Atl. 685); *People v. Wasservogle,* 77 Cal. 173 (19 Pac. 270); *Barton v. People,* 135 Ill. 405 (25 N. E. 776); *State v. Johnson,* 77 Minn. 267 (79 N. W. 968); Brannan's Negotiable Instruments Law (4th Ed.) 554, citing *State v. Hammelsy,* 52 Ore. 156 (96 Pac. 865), holding that the giving of a check is a representation that the drawer has money or credit with the bank, and that it is sufficient to make the drawer guilty of obtaining money under false pretenses if the drawer has no money in the bank or credit with it, and intends to defraud.

In *First Nat. Bank of Murfreesboro v. First Nat. Bank of Nashville,* 127 Tenn. 205 (154 S. W. 965), it is said:

"It is true that the signature of Earthman & Co. to the checks was a representation by them to all subsequent holders of the checks that they had sufficient funds on deposit with the drawee to pay them, and that the drawee would accept the checks when presented, and pay them."

We conclude, therefore, that, when the Central Trust Company issued its draft to the First National Bank of Mason City,

drawn on the Commercial National Bank of Waterloo, the law holds that it thereby represented to the First National Bank that it had funds or credit with the Commercial National Bank sufficient to meet the call of the draft; and that said bank knew, or should have known, that the funds in the Commercial National Bank were insufficient to meet the draft thus issued against it; and that, by so doing, the Central Trust Company perpetrated a fraud upon the First National Bank. Fraud may arise from facts and circumstances, and may be presumed from circumstances and conditions of the parties contracting. Kerr, in his work on Fraud and Mistake (5th Ed.) 1, says that fraud is so various in form and color that it is difficult, if not impossible, to confine it within the limits of any precise definition; that:

"The fertility of man's invention in devising new schemes of fraud is so great that the courts have always declined to define it, or to define undue influence, which is one of its many varieties, reserving to themselves the liberty to deal with it under whatever form it may present itself."

See *Stewart v. Wyoming Cattle Ranche Co.*, 128 U. S. 383, where it was held that acts which the law declares to be fraudulent, independent of the motive, are said to be constructively fraudulent, and may consist of omissions or commissions in violation of some legal or equitable duty, trust, or confidence, whereby another is injured.

It is well settled in this state that in equity knowledge is not a necessary element. *Montgomery v. Shockey*, 37 Iowa 107; *Curry v. Supervisors of Decatur County*, 61 Iowa 71; *Smith v. Bricker*, 86 Iowa 285; *Hunter v. French League Safety Cure Co.*, 96 Iowa 573; *Moyle v. Silbaugh*, 105 Iowa 531; *Kelty v. McPeake*, 143 Iowa 567; *Severson v. Kock*, 159 Iowa 343; *Farnsworth v. Muscatine Prod. & P. I. Co.*, 161 Iowa 170.

It is apparent, therefore, that this $2,500 in the hands of the receiver was fraudulently procured from the First National Bank; and if it was fraudulently procured, the title never passed to the receiver; and, therefore, the funds were held in trust by the receiver for the benefit of the rightful owner, the First National Bank of Mason City. While the funds, in one sense, are in the hands of the receiver (they still rightfully belonging to the First National Bank), since they have been traced into the hands of the receiver, and it has been found that the receiver has

no title thereto, it must follow that the First National Bank should have been allowed a preference on this claim.

We conclude, therefore, that the district court erred in not allowing the First National Bank its claimed preference in this matter for the balance due it, after a deduction of $905.16, funds which it had on hand which belonged to the Commercial Savings Bank of. Waterloo; but this preference shall not be to the prejudice of any other claimants who hold preference as against the mass of the fund that was returned from the Chicago bank to the receiver, if any there be.—*Reversed.*

EVANS, C. J., and DE GRAFF and MORLING, JJ., concur.