NISHNABOTNA DRAINAGE DISTRICT No. 10 et al., Appellants,
v. LANA CONSTRUCTION COMPANY et al.,
Appellees.

**DRAINS:** Engineer as Interpreter of Contract. A mutual agree-
1    ment between the parties to a contract for the excavation of a
public drainage improvement that the engineer shall interpret
the intent and meaning of the contract and accompanying spec-
ifications, and issue estimates accordingly, is binding, and pay-
ments made under estimates furnished by the engineer, in ac-
cordance with his bona-fide and permissible understanding of the
contract, especially when confirmed by the public authorities,
are final and non-recoverable, even though, under another per-
missible construction, the payments largely overpaid the con-
tractor.

**PAYMENT:** Payments under Agreed Interpreter. Bona-fide pay-
2    ments under a contract, in accordance with the interpretation
of one mutually and specially chosen for that purpose, are final
and non-recoverable.

**CONTRACTS:** Agreed Interpreter of Contract. Parties may validly
3    agree that a named party shall interpret the intent and mean-
ing of a contract, and in such case, the interpreter's bona-fide
decision, confirmed by the parties, is beyond recall.

DRAINS: Impeaching Acceptance of Contractor's Work. The ac-
ceptance, by the public authorities, and in the manner provided
by law, of the work of the contractor as a full performance of
the contract, poisoned by no fraud of the contractor's, is a final-
ity.

*Appeal from Pottawattamie District Court.—O. D.*
WHEELER, Judge.

JANUARY 27, 1919.

ACTION to recover a certain amount of money which it
is claimed was overpaid to the contractor for the construc-
tion of a certain ditch in Drainage District No. 10, of Pot-
tawattamie County. Demurrer to the petition sustained by
the court. Plaintiffs appeal.—*Affirmed.*

*John P. Organ,* for appellants.

*Killpack & Northrop,* for appellees.

GAYNOR, J.—On the 7th day of April, 1911, the board
of supervisors of Pottawattamie County, acting on behalf of
the plaintiff the Nishnabotna Drainage District No. 10, let
to the defendants the work of constructing
a drainage ditch in said district. Before
the bids were made, the board, acting for
the district, appointed a competent engineer
to prepare and file plans and specifications for the ditch,
setting forth the starting point, the route, and the terminus
or termini of the ditch, with a plat and profile showing the
ditch and the course and length of the drainage, together
with an estimate of the number of cubic yards necessary to
complete the work, and the probable cost. These plans and
specifications, plat, and profile were on file at the time de-
fendant submitted its bid, and on this, the bid was made.
The contract entered into by the defendant made the plans
and specifications a part of the contract, and provided that,
in all respects, the defendant should comply with the plans

1. DRAINS: en-
gineer as in-
terpreter of
contract.

and specifications, and further said that, should there be any difficulty between the parties to the contract as to the construing of any of the terms or provisions of the agreement relating to the work to be done, the difficulty should be referred to the engineer employed by the first party, and his decision should be final and conclusive upon both. The compensation for the work was to be paid at the rate of 5.99 cents per cubic yard, "measured in the excavation only." The contract and specifications further provided that the board of supervisors should have general supervision of the work, but the details of the entire work were to be in charge of E. E. Spetman, civil engineer, of Council Bluffs, to whom all questions relating to plans of construction or carrying on the work, or construing the intent or meaning of these specifications, should be referred, and that his decision should be final and binding upon both parties. The contract further provided:

"The work will be inspected frequently by the engineer in charge, who will make an estimate on the first of each month, of the amount of work done during the preceding month, which, when properly certified, shall entitle him to payment of eighty per cent of the amount earned, and upon final completion of the work as a whole, * * * the engineer shall report to the board of supervisors, who will thereupon inspect the work, and if satisfactory, shall finally accept the same and order payment in full to the contractor."

After making the contract, the defendant entered upon its work, and as the work progressed, it was furnished from time to time with estimates of the same by the engineer in charge, and received 80 per cent of the compensation as fixed by the contract, based upon the estimates given by the engineer. On the 6th day of August, 1912, upon the final estimate of the engineer in charge of the work, the board of supervisors ordered the payment to the defendant of the

20 per cent that had been withheld upon the estimates aforesaid, less the sum of $500. On the 20th day of December, 1912, the board ordered the payment of this $500, and the same was paid by the auditor, as directed. This action was begun on December 21, 1914.

In the first count of the petition, plaintiffs seek to recover a certain sum of money, which they claim was overpaid to the defendant. It is claimed that the estimates given by the engineer, upon which defendant received payment, were not based on the amount of earth actually removed in the construction of the ditch, but were figured and made as though said ditch, from the point of its commencement to the point of termination, was excavated through solid earth, whereas the ditch, at many places, intersected the Nishnabotna River, and little or no excavation was required there; that the defendant, as a matter of fact, did not excavate as many cubic yards of earth as shown by the estimates upon which it received payments; that, by reason of the method adopted by the engineer in making the estimates, the defendant received payment for more cubic yards of earth than were actually removed.

In the plans and specifications, it was provided that the ditch should run from a point called Station 1, in the center of the Nishnabotna River, to a point called Station 600, in the Nishnabotna River, as shown by plats and profile now on file with the county auditor of Pottawattamie County, which were made a part of the specifications.

The engineer, in making the estimates upon which payments were made, measured the space within the excavation; and determined the number of cubic yards, as it appeared after the ditch was dug, for which defendant was entitled to receive payment by that method, it appearing that he was authorized, by the contract, to interpret and construe the intent and meaning of the specifications, and to make the estimates on which payments were to be made. The origi-

nal estimate of the number of yards necessary to be excavated to complete the ditch, as made by the engineer and set forth in the plans and specifications, was approximately 711,000 cubic yards. Defendant was paid for approximately 712,000 cubic yards. If the method contended for by the plaintiff should be adopted in making final estimates of the work done, then the plaintiff paid for 82,686 cubic yards more than was actually removed by the defendant. If the method pursued by the engineer in making estimates is to control, then the defendant has not been overpaid. The question, then, presents itself:

2. PAYMENT: payments under agreed interpreter. Is the contract susceptible of the interpretation given to it by the engineer? Are the interpretation and construction placed upon the contract by the engineer binding on these plaintiffs? The simple question is: Does the construction placed upon the contract by the engineer bind the plaintiffs?

This case was disposed of on demurrer. The petition discloses the fact that the engineer, in estimating the number of cubic yards for which defendant was entitled to receive compensation from the plaintiff, measured the number of cubic yards appearing in the excavation at the time the estimate was made. The contention of the plaintiff is that the engineer should have based his estimate upon the number of cubic yards of earth actually removed by the defendant. The engineer was acting for and in behalf of the plaintiff, and was by the contract given the right to construe the contract. The plans and specifications were a part of the contract. The engineer evidently construed the agreement to mean that all the work should be paid for by the cubic yard, at 5.99 cents a cubic yard, measured in the excavation only. It is not claimed that any mistake was made in the measurement, or that any fraud was practiced by the defendant or by the engineer, in making the estimates, when made in this way. The only mistake, if a mistake at

all, is in the construction of the contract, and in the method pursued by the engineer in estimating the number of cubic yards for which defendant was entitled to receive pay. The question is this: Are the plaintiffs bound by the interpretation of this contract made by the engineer, on which the estimates and the payments were made? The engineer had no power to determine the compensation of the contractor, or to make the compensation other and different than the contract called for; but, by the terms of the contract itself, the right was given to the engineer to construe the contract and to make the estimates according to the construction placed upon the contract by him. Evidently, the engineer construed the contract to mean that the number of cubic yards, for which payment was specified at so much per yard, should be determined by measuring the excavation. The defendant had nothing to do with making the estimates. The estimates were made by the one appointed by the board, to whom the board had given authority to construe the intent and meaning of the specifications, both parties agreeing to be bound thereby. It was the engineer's duty to inspect the work and make the estimates of the work done during the preceding month, on the first day of each month thereafter. If the board gave the engineer power to construe the contract in making the estimates, and he did construe it as alleged, and made the estimates under the construction so placed upon it by him, and gave those estimates to the defendant, as evidence of its right to receive compensation for work done, and the board of supervisors accepted his estimates, and paid to the defendant, upon the estimates so made, then, upon payment, it became bound by the action of the engineer, both in the construction of the contract and in the method of estimating the work, and it is without remedy, though the construction placed by the engineer was, in fact, wrong. It is not for us to inquire whether the construction placed

upon the contract by the engineer was right or wrong, for the reason that the construction placed on it was a construction made by the one appointed, to whom the right to determine the intent and meaning of the contract was given, and to make the estimate; and plaintiffs agreed to be bound by his construction. It does not appear, nor is it claimed, that any intentional fraud was perpetrated by either the defendant or the engineer in making the estimates, or in securing the money which it is sought now to recover.

The wording of the plans and specifications, on which the bid was made, is as follows: "All work shall be done and paid for by the cubic yard, measured in the excavation only." It was the duty of the engineer to make monthly estimates showing the work done the preceding month, and these estimates were made the basis of compensation, by the contract. The estimates indicated the number of cubic yards for which defendant was entitled to receive pay. The contract fixed the amount that it was entitled to receive for each cubic yard, as shown by such estimates. The contract provided that the board of supervisors should have general supervision of the work, but that the engineer appointed by the board should have charge of it in detail; and it was provided that all questions relating to plans of construction, or carrying on the work, or construing the intent or meaning of the specifications, should be referred to him, and that his decision should be final and binding on both parties. The contract was made on April 7, 1911. It appears that defendant immediately entered upon the work; that, as the work progressed, he was furnished, from time to time, with the estimates of the same by the engineer, and upon these estimates, payments were made. Prior to August 6, 1912, the defendant had been paid, upon the estimates furnished by the engineer, 80 per cent of the total amount shown to be due upon the estimates. On August 6, 1912, the final estimate of the engineer was made, and

the balance, 20 per cent, was ordered paid by the board upon this final estimate, except the sum of $500. For some reason, which does not appear, the board retained $500, and on the 20th day of December following, ordered the payment of the $500 which was withheld, and the same was paid by the auditor to the defendant.

Certain facts are apparent from this record: The engineer, in making his estimate of the amount of earth necessary to be removed, to consummate the contract, figured on the same basis pursued by him when making the final estimates of the work done. The original estimate of the amount of earth to be removed, and the monthly estimates of the amount of work actually done under the contract, totaled practically the same. Before the engineer made his estimates of the amount of earth to be removed within the limits of the ditch designed, the course and distances had been determined upon and marked out, and defendant had before it, at the time it made its bid, the course and direction of the ditch, and all that the plans and specifications showed. In the proposal, it was recited that the defendant had examined the specifications and the form of the contract proposed by the plaintiffs, and he agreed to do the work on the sections designated, in all respects in accordance with the contract and specifications annexed. So we have both parties familiar with the course and length of the ditch, its location, the territory through which it passed, and that some of the ditch lay within the limits of the Nishnabotna River. Defendant had before it the estimates of the engineer as to the number of yards to be removed. Of course, this estimate did not limit, or control, or determine in advance, the number of cubic yards for which defendant was to be paid; but it indicated, before the contract was let, the method adopted by the engineer in estimating the number of cubic yards within the limits of the proposed ditch.

In *Herrick v. Belknap,* 27 Vt. 673, the contract provid-
ed that the engineer should be the  sole judge of the quan-
tity and quality of the work, and from his decision there
should be no appeal.  It was held that this stipulation in
the contract bound the parties, and constituted the en-
gineer an arbitrator between them.

It is apparent that, if parties, competent to contract,
do contract with reference to a subject-matter in which the
compensation  depends upon final determination of the
amount of work done by the party contract-
3. CONTRACTS:  ing to do the work, the parties to the con-
agreed inter-
preter of con-  tract may, in the original contract, agree
tract.
upon some definite person, skilled in the
matter of ascertaining the amount, to determine the amount,
and bind themselves to accept his computation as final and
determinative of the amount of work done, upon which com-
pensation must rest.  So it follows that, where parties, com-
petent to contract, select a third person to fix the price,
amount, or quality of the material, his finding, when made,
is binding upon both the parties to the contract, and can-
not be impeached for mistake which is found only in error
of judgment, or that rests in conclusions drawn from the
facts submitted to the party for judgment.  The finding of
an arbiter chosen by the parties at the time of making the
contract, though the method is not the same, so far as the
conclusion of the same is concerned, is, in its effect, the
same as an award under a submission to arbitration.  So
it would follow that, when the parties have agreed to give
to another the right to construe and determine the intent
and meaning of the contract, and he, in good faith, exer-
cising his best judgment and skill, construes the contract,
and estimates the amount in accordance with the construc-
tion placed by him upon the contract, and it is then acted
upon by the parties, and it is made further to appear that
the contract is reasonably susceptible to constructions

placed, negativing any intentional fraud or purpose to wrong, the parties must abide by his judgment, just the same as if the parties themselves had construed the contract to mean just what this arbiter had construed it to mean, and had made the estimates in accordance with such construction. These parties were capable of making the contract. The contract is not unreasonable, or against public policy. Since they had power to make the contract, its provisions bound both parties. In this case, both parties agreed to be bound by that construction which the engineer, selected by the plaintiff, should place upon the contract. As bearing upon this question, though not directly in point, see *Gustaveson v. McGay,* 12 Daly (N. Y.) 423; *Palmer v. Clark,* 106 Mass. 373; *Green & Coates St. P. R. Co. v. Moore,* 64 Pa. St. 79; *Willingham v. Veal,* 74 Ga. 755.

We hold, therefore, that, inasmuch as the parties had a right to make the contract in question, and did, in the contract, provide that the engineer selected should have charge of the detail of the work, and the power to construe the contract and to make the estimates according to the construction placed upon the contract by him, his construction and estimates, in the absence of fraud, are binding upon the plaintiffs, and the demurrer was properly sustained. We further find that the contract was susceptible of the construction placed upon it by the engineer. We therefore find that the demurrer was rightly sustained.

As to the second count of the petition, to which demurrer was interposed, we have to say that no basis is laid in the allegations of the petition for recovery on that ground. The claim is that the defendant did not dig down to the bottom, as required by the plans and specifications; that, below the bottom of the ditch as constructed by the defendant, there was rock not removed, which would cost a considerable sum to remove, to bring

4. DRAINS: impeaching acceptance of contractor's work.

the ditch to the depth provided for in the plans and specifications; but it does not appear that the defendant has been paid for more than it has excavated. The ditch, as constructed, was accepted by the plaintiffs as completed work, within the terms of the contract. It was the duty of the board to inspect the work before making final payment. The statute imposes this duty upon them. The contract provided for it. There is no doubt that they made the inspection. No fraud or deceit was practiced,—no concealment,—so far as this record shows. They accepted the work as fulfilling the contract, and paid for it. They are not now in a position to insist that the contract was not completed, nor to lay a claim for damages, based upon the fact that the ditch was not sunk to the depth required by the plans and specifications. As to this part of the petition, the demurrer was also rightly sustained. The judgment of the court is, therefore,—*Affirmed.*

LADD, C. J., PRESTON and STEVENS, JJ., concur.