**66 So.2d 613**

## WIGGINTON v. GLOBE CONST. CO., Inc.

No. 40879.

July 3, 1953.

George M. Brooks, New Orleans, for appellant.

Bienvenu & Culver, John M. Culver, New Orleans, for appellee.

HAWTHORNE, Justice.

Plaintiff, Joseph E. Wigginton, seeks to recover from the contractor, Globe Construction Company, Inc., which constructed his house, the cost of remedying certain defects, amounting to $2,600, allegedly caused by defective workmanship, negligence, and want of skill on the part of the defendant in constructing the residence. After trial on the merits the lower court rendered judgment rejecting plaintiff's demands, and he appealed.

On April 6, 1950, plaintiff entered into a written contract with the defendant for the construction of a single frame stucco bungalow, in accordance with F.H.A. plans and specifications, for a price of $7,050. The house was completed on or about July 12, 1950, and the plaintiff and his family moved into it. The alleged defects appeared between that time and the time the suit was filed on June 18, 1951.

The principal defects of which plaintiff complains are that the roof has buckled; that the sheet rock in two bedrooms, the living room, and the dining room has buckled; that the tile on the floors has bubbled and cracked; that the paint in the halls and on the walls is peeling off; that the moulding in the front room is split, chipped, and out of place; that the kitchen cabinets were improperly constructed; that the door frames and doors must be replaced; that the exterior stucco is cracked and needs repairs. To remedy these defects the plaintiff alleges that it will cost the sum of $2600.00, which he itemizes as follows:

| | |
|---|---:|
| Remove and replace sheet rock and ceiling joists in the two bedrooms, living room and dining room | $ 545.00 |
| Paint ceiling, trim, and peeling walls | 155.00 |
| Remove and replace all defective trim | 327.00 |
| Replace all defective materials used in kitchen cabinets, and paint new material | 75.00 |
| Replace all screens that are too small for windows | 90.00 |
| Replace electric outlet and faulty wiring | 7.50 |
| Replace, hang, and finish 7 interior doors | 120.00 |
| Replace, hang, and finish 2 exterior doors | 60.00 |
| Repair cracked stucco (15 cracks) | 182.00 |
| Remove and replace roof and rafters (5 places buckled) | 650.00 |

Remove and replace bubbled tile flooring ...................... 297.00

Remove, replace, and finish outside shutters ................. 7.50

Remove and replace concrete walk 81.00

Repair chipped heaters.......... 3.00

Total ................. $2600.00

■ According to plaintiff's witnesses, the sheet rock on the ceiling buckled and bulged, probably because the ceiling joists had been placed too far apart, and was out of line as much as an inch or an inch and a half in some places, and to remedy this defect all of the sheet rock would have to be removed and replaced at a cost in excess of $500. Defendant's witnesses, on the other hand, conceded that there was a slight bulge or sag in some of the sheet rock, which was nailed to ceiling joists 16 inches apart as specified in the plans and specifications, but believed that the bulge or sag resulted from the drying of moisture in the joists or timbers to which this sheet rock was nailed and that the condition could be corrected by a simple tightening up process of the sheet rock itself, with some painting required, which would cost at the outside the sum of $90. We do not think that the plaintiff has established by a preponderance of the evidence the necessity of removing and replacing the sheet rock in order to remedy the admitted defect at a price of $545, and we are convinced that this defect can be remedied in the manner set forth by defendant's witnesses. However, we think their estimate of the amount necessary for this purpose is somewhat low, and that an award of $150 to the plaintiff would do justice between the parties.

■ It is plaintiff's contention that the trim in the house has shrunk because of the use of green material, causing all joints to open, and that this trim was improperly nailed. He alleges that as a consequence all of the trim will have to be replaced, and that for this he should be allowed the sum of $327. Defendant's witnesses, on the other hand, conceded that the trim was defective in one or more places, but stated that its entire removal would not be necessary and that the defects could be remedied by painting and patching. We do not think plaintiff should be awarded the cost of replacing the whole trim because the proof does not show that the trim was so defective as to require a complete replacement. According to defendant's witnesses these repairs could be made for the sum of $35, but we consider this a low estimate and will award $75 to plaintiff to repair the trim.

■ Plaintiff also contends that the roof has buckled in numerous places, and that to remedy this defect it is necessary to remove and replace the roof and the rafters. We do not think the evidence supports him entirely in this contention. The evidence shows that the roof itself was water-tight and was constructed, as a whole, in a workmanlike manner, but that there was a slight bulge or hump near the edge or next to the gutter which was undoubtedly caused by de-

fective material or workmanship. The evidence shows also, however, that this condition could be corrected by removing what is termed the first sheathing or starter board and replacement of the felt and the first row of shingles at this point. Under these circumstances plaintiff is not entitled to a new roof or to have the old roof removed and a new one placed on the dwelling. According to defendant's witnesses, this defect could be remedied at a cost of $30. We do not think the labor and materials necessary to remedy this defect can be purchased for $30, and we accordingly will allow to plaintiff for this purpose the sum of $100, which we think will be fair and equitable.

■ Plaintiff also contends that the asphalt tile throughout the house is uneven, or that the surface is not level and smooth as a floor should be, and according to his witnesses this condition was caused by some foreign substance under the tile or imperfection in the concrete slab on which it was laid, such as gravel or rocks protruding through the surface of the cement. As to this defect, as in all others, plaintiff insists that he is entitled to an entirely new tile floor throughout the house and should be awarded the sum of $297 for the purpose of removing the old tile and replacing it with new. Defendant's witnesses conceded that as many as 10 pieces of tile needed replacing because of imperfection in the concrete slab or foreign material under the

tile, and their estimate as to the cost of this replacement ran from $2 to $5. We think this figure is low, but we do not agree that the plaintiff is entitled to an entirely new floor. We have concluded that the sum of $40 will cover the cost of the necessary replacement.

Plaintiff also alleges that an electric outlet was not set flush with the baseboard, and that to remedy this defect he is entitled to the sum of $7.50. Defendant concedes that this outlet was improperly placed, and we will accordingly allow plaintiff the amount sought.

As to the other defects alleged by plaintiff, he has not made out his case by a preponderance of the evidence so as to justify an award in his favor. Moreover, we think the defendant has established that it built the dwelling according to F.H.A. plans and specifications, and that, except for the defects for which we have allowed recovery, the house was constructed in a good and workmanlike manner and with suitable material for the contract price paid, that is, $7,050.

A total of the amounts which we have concluded should be allowed for repair of the various defects is $372, and accordingly plaintiff is entitled to a judgment for this amount.

For the reasons assigned, the judgment appealed from is annulled and reversed, and it is now ordered, adjudged, and decreed that the plaintiff recover from the defend-

ant the sum of $372, with legal interest from date of judicial demand. Defendant-appellee is to pay all costs.

LE BLANC, J.; absent.