**EASTERN IOWA LIGHT AND POWER COOPERATIVE, Appellant,**

v.

**Fred R. McKENZIE, doing business as Fred R. McKenzie & Co., Appellee.**

**No. 16737.**

United States Court of Appeals
Eighth Circuit.

Nov. 1, 1961.

Rehearing Denied Dec. 7, 1961.

J. David McFerren, Davenport, Iowa, and William M. Dallas, Cedar Rapids, Iowa, made argument for appellant; Howard P. Eckerman, Davenport, Iowa, was with them on the brief.

P. B. Holleran, Clinton, Iowa, and Burrel Barash, Galesburg, Ill., made argument and filed brief for appellee.

Before SANBORN, MATTHES and RIDGE, Circuit Judges.

RIDGE, Circuit Judge.

In this diversity action all jurisdictional requirements appear in the record; therefore, federal jurisdiction is premised in Section 1332(a) (1), Title 28 U. S.C.A.

Appellee commenced this action in the United States District Court for the Southern District of Iowa, by a complaint in two counts: (1) to recover an amount claimed to be due for work and labor performed under a written contract relating to a "Site Development" and (2) for declaratory judgment as to his obligation under that contract to dredge a barge channel in the Mississippi River. Appellant by answer admitted the execution of the contract, denied full performance thereof by appellee and asserted a counterclaim for costs allegedly incurred in reletting to another the work of dredging the barge channel in question. After trial before the District Court without a jury, judgment was entered in favor of appellee. This appeal followed.

The facts leading to the judgment appealed from are these:

Appellee, a contractor in heavy construction, dredging, pile-driving and

marine work, and an engineer by profession since 1922, undertook by written contract to perform "Site Development" work in relation to property of appellant upon which an electric generating plant near Montpelier Station, Muscatine County, Iowa, adjacent to the navigation channel of the Mississippi River, was to be constructed. Near the completion of that undertaking a dispute arose between the parties as to whether the contract by its terms obligated appellee to construct a barge channel in the river along the site as a part of the work undertaken to be performed by him. Hence the salient question for determination on this appeal revolves around the proper legal interpretation to be given to the written integration of the parties concerning the construction of the barge channel. Subsidiary thereto is the question, whether the District Court erred in disregarding the project engineer's interpretation of that contract in the light of "Part 2—General Requirements" entitled "Interpretation of Specifications," and particularly "Section 3" thereof which reads as follows:

"Report any errors or ambiguities in specifications to engineer as soon as detected; Engineer will answer questions regarding and interpret intended meaning of specifications; his interpretation shall be final."

Appellee's contract with appellant is referred to in the record as "Contract 14, Site Development." There is no dispute between the parties as to the wording thereof. Appellee was awarded the contract as a result of a lump sum bid of $282,840. That bid required him to perform a total of eleven separately enumerated items. The controversy here centers around Item 2 of the "Bid Schedule" which reads:

"Construction of Dredged Fill; quantity 120,000 (CY) Unit Price, $0.57; Extended Price, $68,400.-00."

Pertinent parts of the contract relating to that bid item are: "Part 3—Site Work" which specifies under the subheading "Work Included—(d) Dredging and Construction of fill, including stockpiling." Under this same Part, 3, Paragraph 6, "Dredging and Construction of Fill," sub-paragraph (a) provides:

"a. Includes labor, equipment, general methods, and incidental work necessary for dredging, handling, placing, shaping, etc., all materials required for construction of all fill shown. Includes the dredging, deposition in stockpile on site of material for future filling of site area by Owner to compensate for embankment settlement and for use by other contracts. *Includes formation of barge channel of docking area.*" (Emphasis added.)

Paragraph 6(c) of the same part reads:

"c. Obtain material for embankment by dredging from bed of Mississippi River within the area shown. Owner will obtain necessary permit for dredging operations. Dredging will conform to Corps of Engineers of the Department of the Army Regulations. Carry on dredging operations at such locations and in such manner as not to interfere with river navigation. No material shall be taken within 100' of any river bank or wing dam, except as specifically shown."

Part 4 of the contract contained a "Description of Bid Items." With respect to construction of the dredged fill, the contract provided as follows:

"*Construction of Dredged Fill, per cubic yard:* Construct all fills as specified and as shown on plans, including stockpiling, compaction, and finish grading of all fills as specified. *Dredge barge channel as shown.* Embankment will be measured for payment as the volume of material in place between surface of stripped and cleared embankment area and the completed embankment as determined by cross section of the area. No payment will be made for unauthorized excavation or fill." (Emphasis added.)

Part 1 of the contract, entitled "Detailed Specifications" informed bidders as to "Site Development" work. Under paragraph 1(d) thereof is:

" 'The work' shall mean the work to be done and the equipment, supplies and materials to be furnished under the contract, unless some other means is indicated by the context."

Sub-paragraph 3(a) of that same part is headed "Plans" and is as follows:

"The work shall conform with the following drawings which constitute the 'Plans' and are an integral part of the specifications and the contract documents."

Immediately beneath this recitation in the contract specific drawings were enumerated. Among those were Lot Layout, Drawing No. 2247-2; Site Development Sheet 1, Drawing No. 2247-4; and Site Development Sheet 2, Drawing No. 2247-5. (Photographic reproductions of these drawings appear as Plaintiff's Exhibits 5, 7 & 8, respectively, in the record.) These drawings show a barge channel to be dredged in the Mississippi River to a minimum depth of 534 feet above sea level for the full distance between the east and west property lines of the site. Under "Part 3—Site Work" Paragraph 7 relating to "Embankment Construction," sub-paragraph (a) thereof provided:

"Embankments, grades to be constructed of dredged material to lines and grades shown and as staked by Engineer."

Under (b) of that same paragraph it is stated:

"Dredged material must be free from pockets, streaks or leayers of material differing appreciably in texture of gradation from surrounding material when placed in embankment. Include no light silt, muck or other unstable material in fill; provide relief or branch line with valve for wasting unstable material. Pump off and waste any overlay of unstable mud and silt that appear in embankments."

Subparagraph (c) reads:

"Place dredged fill such that transporting water is not trapped within fill. Provide necessary means for returning to river the transporting water and *unstable material* so that no unauthorized build-up of material occurs in river." (Emphasis added.)

The contract expressly stated that it was the "Intent of Specifications" to "require contractor—to perform all work and services described in contract documents, unless otherwise specifically indicated."

The contract contained this "Notice and Instructions to Bidders":

"Prior to the submission of the Proposal, the Bidder shall make and shall be deemed to have made a careful examination of the site of the work of the Plans and Specifications—and shall become informed as to the location and nature of the proposed construction—the kind and character of the soil and terrain to be encountered—and all other matters that may affect the cost and the time of completion of the work—." (Sub-par. 4)

The contract specifically stated in "Part 3—Site Work":

"6(d). Make thorough inspection of entire site and river and of conditions existing therein that affect dredging. Owner will in no manner be responsible for dredging conditions encountered."

The foregoing are the only provisions of the contract in question pertinent to the construction of a "barge channel" and the condition of the river which might affect "Dredging and Construction of Fill." For the purpose of this appeal, it may be categorically stated that appellee did not, in performance of any dredging work done by him, construct a barge channel in the Mississippi River as shown, and called for in the drawings (Plaintiff's Exhibits 5, 7 & 8 supra) nor within the ambit of the Plans and Specifications referred to above.

Exhibits 5, 7 and 8, supra, show a barge channel to be dredged in the river. Appellee testified: That he examined the contract specifications which read "Dredge barge channel as shown" and considered it in connection with Site Development Sheet No. 1; that by looking at this Exhibit (No. 7) he could see that the river channel or pool height referred to in the barge channel dredging section was at an elevation of 545 feet above sea level; that this exhibit indicated to him he was requested to dredge a channel to a minimum depth of 534 feet and if that was done the channel would be eleven feet in depth; that Exhibit 7 indicated to him the barge channel was to be on the north side of the Mississippi River, but that said exhibit further indicated that the barge channel was "between east and west property lines" of the site only. Exhibit 7 also told appellee that if you "wanted to find the east limits or the west limits of the site area you should refer to the plans and drawings 2247–2" (Exhibit 5). This last-mentioned drawing shows a broken line identified thereon as "edge of barge channel" at an elevation of 534. Appellant explained that the symbol 14–14 on this exhibit indicated to him that the formation of the barge channel was to be done by him and that the drawings, having an arrow pointing to the broken line above mentioned, indicated to him where the north edge of the barge channel was to be and also what was to be east and west end thereof. From this testimony of appellee it is obvious that, at least at the time of trial, the contract by its terms unambiguously revealed to him its requirements for the dredging of a barge channel and that such subject matter was specifically covered in his agreement with appellant.

■ Notwithstanding it is appellee's contention in this appeal that he was not obligated by any specific provision of his contract to dredge the barge channel, "it (the barge channel) was only to be the end result of the dredging to obtain fill from the Mississippi River for developing the site." From what is said above, it is evident that such assertion does not rest on the proposition that the contract is ambiguous in its terms respecting the dredging of a barge channel. Such contention is premised in the suggestion that under the terms of the contract as executed by the parties, when interpreted in the light of their actions during and before construction was commenced, they showed such an attitude toward the dredging and construction fill that it can only be concluded that they did not agree that the construction of a barge channel was to be a distinct and separate construction item. We say that such is merely a "suggestion" made by appellee: first, because he does not undertake to point out any testimony or factual situation in the record before us from which it can be legally determined that the parties gave to any provision of their contract as integrated a specific mutual interpretation, or that they ever made any legal modification thereof; and, secondly, because the District Court did not premise the judgment appealed from in this case on any legal conclusion that the contract by its terms was ambiguous. The District Court in its findings of fact specifically stated: "The contract did not require the construction of a barge channel as such." That statement is revealed as being premised in a finding that "under the terms of this contract, especially when construed in light of the actions of the plaintiff and defendant during and before the construction, showing their attitude toward this item (barge channel) it is evident that the parties did not agree that this was to be a distinct and separate construction item." It is most apparent from the record made in the District Court that such finding was from consideration of testimony to the effect that "the barge channel referred to in the contract (was) mentioned only incidentally in the plans and drawings"; that "(t)here was not sufficient dignity given to the barge channel to list it among the eleven items in the bid schedule"; that it was not men-

tioned in (the) "preconstruction conference"; and, because "(t)he Engineer who supervised (the) Site Development with great care paid no attention to the barge channels until about the completion date" nor made any "soundings or inspection—during all (that) time—to determine progress of the channel." Appellee in this appeal relies on the same facts in support of his contention that he was not obligated by the contract terms to construct the barge channel. Such factual circumstances, in our opinion, neither individually nor collectively rise to the dignity of legally sufficient evidence to warrant a ruling that appellee's "contract did not require the construction of a barge channel as such," *contra* to the specific contract provisions therefor.

■ Under the laws of Iowa, as elsewhere, "(a) written instrument is ambiguous only when found to be of uncertain meaning by persons of competent skill and information" to make an interpretation thereof. Cf. Comptograph Co. v. Burroughs Adding Machine Co., 179 Iowa 83, 159 N.W. 465, 473. It is also settled law that "all contracts must be interpreted with reference to their subject matter" and "if the general purpose of an instrument is ascertained, the language of its provisions must be construed with reference to that purpose and so as to subserve it." 12 Am.Jur. § 242, pp. 777–8. And as said by the Supreme Court of Iowa, in Comptograph Co. v. Burroughs Adding Machine Co., supra, 159 N.W. loc. cit. 473:

"It is the province and duty of the court to construe a written contract, and it should be construed, if possible, so as to give effect to all of its parts. It seems that the parties to this action were in dispute as to its proper interpretation, and that they did not act upon either the plaintiff's or defendant's interpretation of it. However this may be, we understand the law to be that where the parties to an agreement have acted upon a certain interpretation of it, this interpretation will not be followed by the courts where the contract is not ambiguous, since a construction contrary to the plain meaning of the instrument is necessarily erroneous, and the parties are not bound by their erroneous construction of it. Spencer v. Millisack, 52 Iowa 31, 2 N.W. 606; also [Philadelphia, Wilmington and Baltimore] Railroad Company v. Trimble, 10 Wall. (77 U.S.) 367, 19 L.Ed. 948."

■ The evidence in this case establishes that appellee, an experienced contractor and engineer by profession, unquestionably understood from the unambiguous terms of the contract here considered, that the "end result" of a part of the work he assumed to perform thereunder would finalize in the establishment of a barge channel, without further cost to appellant, other than the bid price appellee made for "Construction of Dredged Fill." This is apparent from his own testimony given at the trial and from the terms of the contract, supra. Under the law, he is to be charged with knowledge of all provisions of the contract and what the plans, specifications and drawings, made a part thereof, revealed. The fact that the contract did not provide separate compensation for dredging the barge channel did not eliminate that objective of the contract as a contractual obligation assumed by appellee. A contract need not contain definitely and specifically every fact in detail to which the parties have agreed, provided the phrases used can be made certain by proof and reference to the contract as a whole. Cf. Southwest Pipe Line Co. v. Empire Natural Gas Co., 8 Cir., 33 F.2d 248, 64 A.L.R. 1229. Appellee, by his bid, proposed "to perform the work described in the specifications and addenda." Among the items enumerated was "Construction of Dredged Fill." This bid item, as well as the other bid items, was fully described in the contract as being "intended to cover complete work as specified and shown on plans, each item to include necessary labor, materials and equipment." The item "Construction of Dredged Fill" included, among other things to be done, "Dredge barge channel

as shown." The barge channel to be dredged was clearly shown on the drawings which were enumerated in the contract. The only inference to be made from the record is that the above conditions were agreed to and understood by the parties at the time of this integration. The appellee, during the course of his cross-examination, admitted that when the contract and the drawings (Exhibits 5 and 7) were examined by him they revealed that if he had completed the dredging in accordance therewith there would have been a barge channel of a minimum depth of eleven feet between the east and west property lines of the "Site Development" and that the broken line of Exhibit 5 indicated to him the north edge of the barge channel as well as the east and west ends thereof. The subject matter of such dredging was therefore specifically covered in the agreement by the parties. Under the specific provisions of the contract, the "Site Development" was to be filled as marked by the Engineer and "the barge channel" was to be dredged as revealed in the drawings. Since the contract was not ambiguous in its terms as to both such objectives, it should be construed and enforced as drafted and executed by the parties. Huntsman v. Eldon Miller, Inc., 251 Iowa 478–481, 101 N.W.2d 531, 533.

The fact that when appellee was called upon to complete dredging of the barge channel he had no place to deposit "unstable" dredging material on the site development, did not relieve him from his contract obligation even though he says he "definitely would not have accepted that first work order—until the channel was dug" if he knew that he would have "no place to dump" unstable dredged material taken from the river. Apparently it was the acceptance by appellee of work orders #1 and #2 without cost to appellant which is the premise of this controversy. Those work orders caused appellee to "go off the site" and to "make the fill" from borrow areas. Thereafter he had no place to dump "unstable" dredging material. What was to be

dredged from the river for use as site fill was to be stable matter. It was to be free from "light silt, muck, or other unstable material." If the material in the barge channel was "unstable" for construction fill, his contract called upon him to "provide necessary means for returning (it) to the river."

Such, in legal effect, is the interpretation given to the contract in question by the Engineer. The contract by its terms stated: "His (the Engineer's) interpretation shall be accepted as final." (Part 2, sub-par. 3, supra.) Appellant asserts that this provision in the instant contract gave the Engineer the power to construe the contract; that such interpretation is within the provisions thereof; and that appellee having agreed that such was to be binding upon him, the District Court erred in disregarding that interpretation by the Engineer. In support thereof, appellant cites the following authorities: Nishnabotna Drainage District No. 10 et al. v. Lana Construction Co. et al., 185 Iowa 368, 170 N.W. 491; United States v. Moorman, 338 U.S. 457, 70 S.Ct. 288, 94 L.Ed. 256; United States v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113; Merrill-Ruckgaber Co. v. United States, 241 U.S. 387, 36 S.Ct. 662, 60 L.Ed. 1058. This being a diversity case, the substance of the rulings made in the cited authorities may be best summed up by what the Supreme Court of Iowa said in relation to a similar contention made in the Nishnabotna Drainage case, supra, 170 N.W. loc. cit. 491:

"The contract entered into by the defendant made the plans and specifications a part of the contract, and provided that in all respects the defendant should comply with the plans and specifications, and further said that, should there be any difficulty between the parties to the contract as to the construing of any of the terms or provisions of the agreement relating to the work to be done, the difficulty should be referred to the engineer employed by the first party, and his decision should be final and conclusive upon both."

As to such a provision in a construction contract, absent any issues as to fraud or mistakes, that Court further said (170 N.W. loc. cit. 492, supra):

"The question is this: Are the plaintiffs bound by the interpretation of this contract made by the engineer on which the estimates and the payments were made.

\* \* \* \* \* \* \*

"The estimates were made by the one appointed by the board, to whom the board had given authority to construe the intent and meaning of the specifications; both parties agreeing to be bound thereby.

\* \* \* \* \* \* \*

"It is not for us to inquire whether the construction placed upon the contract by the engineer was right or wrong, for the reason that the construction placed on it was a construction made by the one appointed to whom the right to determine the intent and meaning of the contract was given, and to make the estimate, and plaintiffs agreed to be bound by his construction."

■ The authorities cited by appellee in support of his contention that the Engineer's interpretation of the specifications is not final, are clearly distinguishable on their facts. Of course, an engineer authorized by contract to resolve disputes between the contracting parties may not change the plans and specifications or approve and accept inferior materials and workmanship, as considered in F. E. Marsh & Co. v. Light & Power Co., 196 Iowa 926, 195 N.W. 754. Accord, Salt Lake City v. Smith, 10 Cir., 104 F. 457.

No issue is raised by appellee that the interpretation given to the instant contract by the Engineer is premised in fraud or bad faith. The interpretation so made can be read upon the specific language of the contract as integrated by the parties. We can find nothing unfair or unreasonable in enforcing that obligation, as appellee would now have us rule.

The judgment appealed from is reversed and this cause is remanded for further proceedings not inconsistent with this opinion.

### On Petition for Rehearing.

PER CURIAM.

■ On petition for rehearing appellee "asks the Court to consider other matters encompassed in this appeal which are not reflected in the Court's opinion" and which appellee asserts must be determined in the interest of justice on retrial of this case.

The "other matters" so referred to by appellee relate to issues raised by appellant's counterclaim seeking judgment against appellee for his failure to "dredge the barge channel" as considered in our opinion previously filed herein.

Appellant, in its assignment of errors in this appeal, claimed that the "District Court erred in failing to allow defendant an offset for the fair and reasonable costs of completion of the barge channel." But, as appellee states in his petition for rehearing: "In view of the Trial Court's judgment, there was no occasion (for it) to pass upon the credit due Appellant," if any, as asserted in the counterclaim herein. We are in accord with appellee's statement of that situation. It was a consequence thereof that matters relating to the appellant's counterclaim were not discussed in the main opinion filed herein. The District Court made no findings of fact or conclusions of law as to what "appellant is entitled to" as a credit to appellee's claim for cost of "dredging the barge channel as shown," presumably because it found "(t)he contract did not require the construction of a barge channel as such."

Therefore, the reversal of the judgment entered herein will permit the District Court at another trial to consider that matter, along with all other issues raised and presented by the pleadings herein, "not inconsistent with" our opinion as previously filed.

Appellee's motion for rehearing is denied.