**ELLIOTT CONSOLIDATED SCHOOL DISTRICT, Plaintiff,**

v.

**John G. BUSBOOM, an individual d/b/a John G. Busboom, General Contractor, and United Pacific Insurance Company, Defendants.**

**UNITED PACIFIC INSURANCE COMPANY, Third-Party Plaintiff,**

v.

**NEBRASKA SHEET METAL CONTRACTORS, INC. and Nebraska Sheet Metal and Roofing Contractors, Third-Party Defendants.**

**Civ. No. 2-438.**

United States District Court
S. D. Iowa, W. D.
April 3, 1964.

Swanson, Swanson & Boeye, Red Oak, Iowa, for plaintiff.

Smith, Peterson, Beckman & Willson, Council Bluffs, Iowa, for defendants and third-party plaintiff.

Emmet Tinley, Leon Minor Barnes, Council Bluffs, Iowa, for third-party defendants.

HANSON, District Judge.

The plaintiff entered into a contract with defendant Busboom for the construction of an elementary school building. The defendant Busboom sub-let the construction of the roof of the said elementary school building to the third-party defendants, Nebraska Sheet Metal Contractors, Inc. and/or Nebraska Sheet Metal and Roofing Contractors, under an agreement that said roof was to be constructed by the third-party defendants in accordance with the plans and specifications furnished. This is admitted in the pleadings.

These agreements in part read as follows:

### Contract for Building

"This agreement made this 7th day of September, 1957, by and between John G. Busboom, an individual d/b/a John G. Busboom, General Contractor (Salina, Kansas) (herein called Contractor), and Elliott Consolidated School District, Elliott, Iowa (herein called Owner), provides that: in consideration of the payments to be made by the Owner to the Contractor as provided for in the specifications, the Contractor does hereby contract and agree to erect and complete the General Construction of the Owner's proposed new Elementary School Building in Elliott, Iowa, in a good, substantial and workmanlike manner, in accordance with the plans and specifications (which are admitted to be a part of this contract), prepared by Chas. W. and John A. Shaver, Architects, Salina, Kansas; and to the satisfaction of and under the inspection of the said Architect.

And the said Contractor hereby agrees to furnish and pay for all necessary labor, materials, tools and equipment, and to erect complete in every detail the construction work above-mentioned, on or before the time mentioned in the Specifications."

### Performance Bond

"Know all men by these presents: That we, John G. Busboom, an individual d/b/a John G. Busboom, General Contractor (Salina, Kansas), as Principal, and United Pacific Insurance Company, a corporation, as Surety, with its principal office in the City of Tacoma, Washington, and authorized to do a surety business in the State of Iowa, are held and firmly bound unto Elliott Consolidated School District of Elliott, Iowa, as obligee(s), in the full and just sum of One Hundred Fifty-three Thousand Five Hundred and No/100 Dollars ($153,500.00), for the payment of which we hereby bind ourselves, our heirs, administrators, executors, receivers, successors, and assigns, jointly and severally, firmly by these presents * *.

"Now therefore, if the Principal shall well and truly perform and comply with the said contract and any and all duly authorized modifications subsequent thereto, with or without notice to the Surety, (except that notice shall be given to the Surety for any modifications that increase the amount of the contract by twenty per cent or more of the original contract price) and pay over,

make good or reimburse the Obligee(s) for any and all loss sustained by the Obligee(s) and caused by the Principal's failure to comply with said contract, then this obligation shall be null and void, otherwise to be and remain in full force and effect."

The specifications contain the following clause:

" * * * No certificate given, or payments made under the contract, nor occupancy of the building either partially or entirely by the Owner, shall be considered as evidence or acceptance of any workmanship or materials that are not in strict accordance with the plans, specifications and contract; and the Owner shall have the right to enter and occupy the building when same is in suitable stage of completion for occupancy, whether or not the final acceptance and settlement have been effected."

The plaintiff in paragraph 8 of their petition claims that the roof on the building was not built according to the specifications, although the defendants reported to the plaintiff that all the plans and specifications were complied with, inducing plaintiff to pay the defendant the contract price.

In paragraph 10 of the petition, it is alleged that the faulty work and material used were concealed and could be discovered only by removing cross-sections of the roof. In paragraph 11, it is alleged that the defendant defrauded the plaintiff.

The plaintiff claims that by reason of the deceitful and fraudulent acts in putting on the inferior roof, it was necessary to replace the roof at a cost of $15,000.00 and that water came through the roof and damaged the interior of the building in the amount of $1,500.00.

■ The plaintiff pleaded two claims in the same count, one for breach of the agreement to build the building according to the specifications and the other for fraud. These should have been put in separate counts but no motion for more specific statement or motion to recast was made. In his opening statement, counsel for plaintiff made this clear and the case was tried on these two theories.

The United Pacific Insurance Company agreed to pay for any and all loss sustained by the obligee, Elliott Consolidated School District, and caused by the failure of the Principal, John G. Busboom, to comply with the contract. The principal question in the action on the bond is whether or not the contract was breached. Busboom contracted to erect and complete the building in a good, substantial and workmanlike manner, in accordance with the plans and specifications. Whether or not it was so completed is the first question as to the bondsman's liability and the second question is the extent of the loss to the obligee.

■■ The certificates given or payments made under the contract are no defense for two reasons. One is the clause in the specifications which says payment or certificates are not acceptance of defects in workmanship or failures to comply with specifications. This is in the specifications, but the specifications are incorporated into the contract when it is agreed that the contract will be performed in accordance with the plans and specifications. This is not in conflict with that part of the contract which says the work is to be done to the satisfaction of and under the inspection of the architect.

The second reason is that given by the Iowa court in City of Osceola v. Gjellefald Const. Co., 225 Iowa 215, 279 N.W. 590:

"Under such circumstances the principle of law is, as laid down by courts throughout the country, that in the absence of fraud or mistake acceptance of the work bars and estops the city *for defects known or discoverable* by reasonable attention on the part of the engineer in the performance of his duty in inspecting the work. * * *

"We are of the opinion that the fair and reasonable intent and meaning of the contract, as well as of the statutory provisions of the bond, to be that, in so far as undiscovered and unknown defects are concerned, the acceptance of the work should not operate as a bar to recovery for damages on account of such defects. While not plainly expressed, this must be held to be an implied condition of the bond."

This is the general rule. 13 Am.Jur.2d, Sec. 55, P. 59.

United Pacific does not actually plead acceptance as a defense. See Rule 8(c) which makes payment and release affirmative defenses. The Pretrial Conference Order does, however, recite that the defendant United Pacific Insurance Company is claiming this defense.

■ The court makes the following findings of fact:

1. One or more of the specifications which the plans called for in putting on the roof were substantially breached and not substantially complied with;

2. That the work in putting on the roof of the school was not in a good, substantial, and workmanlike manner;

3. That the defects in the roof as a result of the lack of good, substantial, and workmanlike manner and the failure to substantially comply with one or more of the specifications which the plans for putting on the roof called for were concealed and were not discoverable by reasonable attention.

4. That the defects in the workmanship and failure to substantially comply with the specifications were the direct and proximate cause of the damages to the interior of the building and necessitated that the plaintiff put a new roof on the building.

The court feels that as to the action against United Pacific, the case of City of Osceola v. Gjellefald Const. Co., supra, could not be more in point. In this case, the court emphasized that the work was not done under an inspector other than inspection at irregular intermittent intervals by the engineer who drew the plans and specifications. The same situation was present in this case.

■ The general contractor is responsible to the owner for acts of his subcontractor which affect the results which the general contractor is under a duty to achieve for the owner. Restatement of Torts, Sec. 426; 57 C.J.S. Master and Servant § 591, p. 365.

The court in City of Osceola v. Gjellefald Const. Co., supra, also recited the general rule that as to known defects, acceptance of the work in the absence of fraud or mistake is a complete bar to recovery on the construction bond. The court stated that this can consist of fraud inducing the acceptance or it can be "legal fraud" due to acceptance of work which does not comply substantially with the specifications. The Gjellefald case discussed the purposes and the limitations of the rule on acceptance of the work and to repeat it all is not necessary. This case and its doctrine has been consistently adhered to by the Iowa court. City of Chariton v. J. C. Blunk Construction Company, 253 Iowa 805, 112 N.W.2d 829, reaffirmed the Gjellefald case saying that substantial deficiency in the work constitutes a prima facie case of fraud.

■ There are certain areas in the law where courts talk of legal fraud or constructive fraud. The courts allow prima facie cases to be made upon the showing of certain badges of fraud. One of those badges is substantial non-compliance with specifications. To this extent, the statement that fraud is never presumed is subject to qualification. The plaintiff in this case has fully carried the burden of proving all the elements of the case against United Pacific. Luebke v. Freimuth, 248 Iowa 58, 78 N.W.2d 473 (Iowa); Leach v. Central Trust Co., 203 Iowa 1060, 213 N.W. 777, 57 A.L.R. 1165, 37 C.J.S. Fraud § 94, p. 393.

■ The court feels that as against United Pacific and Busboom there was at least legal fraud in that the specifications were not substantially complied

with and no reasonable excuse was offered or shown by the evidence. The idea that the damage might have been caused by natural moisture from inside the building was completely untenable and unbelievable. Therefore, even if the defects had not been concealed, fraud would be a defense to acceptance. The defects are not to be held discoverable in this case because of the fact that the school janitor sometimes viewed the work. This was not his job and he was not relied on for this. There was no evidence that he discovered the noncompliance with the specifications.

The court is making no finding of actual fraud against United Pacific and John G. Busboom because the roof work was subcontracted to Nebraska Sheet Metal and Roofing Contractors who actually put the roof on. It was not actually put on by John Busboom.

■ The court concludes that the plaintiff did prove its damages to be $7,000.00 for the cost of replacing the defective roof and $927.83 as damages to the interior of the school building, and, accordingly, judgment for these amounts plus costs and interest should be entered against United Pacific Insurance Company. This was a correct measure of damages. Farrington v. Freeman, 251 Iowa 18, 99 N.W.2d 388; Fox v. Webb, 268 Ala. 111, 105 So.2d 75, 67 A.L.R.2d 1007; Wigginton v. Globe, 223 La. 695, 66 So.2d 613; Morgan v. Gamble, 290 Pa. 165, 79 A. 410.

The plaintiff's costs for putting on the new roof were $7,803.24. This exceeded by about $800.00 the payments which were made to Nebraska Sheet Metal and Roofing Contractors, as the cost of putting on the first roof. The record shows the second roof was a slightly more expensive roof in that additional tar was used. Therefore, the court is making an adjustment in awarding only $7,000.00 as damages for the cost of replacing the roof and not $7,802.24.

■ The plaintiff asked judgment for interest from October 26, 1959. This is a suit on a bond and interest normally accrues from the date of demand. However, there is an exception when the amounts are unliquidated, and in that situation, interest accrues from the date the amount becomes liquidated. The plaintiff's expenses accrued by October 12, 1961, and, therefore, plaintiff will be allowed interest at 5% from October 12, 1961, on the amount of $7,927.83 which is the total cost for replacing the roof and repairing the interior of the building.

A few words should be said about the brief of United Pacific. They claim the plaintiff tried its case solely on actual fraud. The pleadings reveal differently. Also, in the opening statement at the trial, the plaintiff stated that the case was for breach of contract and fraud. The case was tried on that basis. United Pacific says they never offered proof of acceptance because it would do no good where fraud is alleged. That may be correct, and in fact at least legal fraud as explained was shown against the General Contractor Busboom. United Pacific also says even if fraud was not alleged, the case would have resolved itself into a fraud case. This is not completely so. It could and in fact did resolve itself into whether or not the defects were concealed and not reasonably discoverable, or whether there was legal fraud or whether there was actual fraud. All three are defenses to acceptance and all three were pleaded. The court in finding liability on the grounds of concealment not readily discoverable assumed that acceptance could be proven. The issue of concealment and discoverability was fully tried and United Pacific not prejudiced. According to the case of Nishnabotna Drainage District v. Lana Const. Co., 185 Iowa 368, 170 N.W. 491, the plaintiff's petition might have been subject to a motion to dismiss if it had not pleaded fraud and concealment. United Pacific can claim no prejudice by reason of these pleadings.

### CROSS-CLAIM

United Pacific claims indemnity against the subcontractor of Busboom, Nebraska Sheet Metal Contractors.

United Pacific had to answer for Busboom's breach of contract and now brings this cross-claim for indemnity over against Nebraska Sheet Metal Contractors.

The basis for the indemnity is that Nebraska Sheet Metal had breached an implied duty they owed to Busboom and that Busboom and United Pacific are liable solely for that reason. The alleged breach of duty is the failing to perform the agreement to construct a roof on the school which complies with the specifications and good workmanship. Blackford v. Sioux City Dressed Pork, Inc., 254 Iowa 845, 118 N.W.2d 559, in general acknowledges such a cause of action. The Iowa court followed Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133.

■ It is quite generally the rule that an owner or general contractor may recover from the contractor or subcontractor, as the case may be, when the subcontractor or contractor has imposed liability on them by reason of their failure to properly perform their contracts. In addition to the Ryan and Blackford cases are: D. M. Picton & Co. v. Eastes, 5 Cir., 160 F.2d 189; Bethlehem Shipbuilding Corp. v. Joseph Gutradt Co., 9 Cir., 10 F.2d 769; Bowyer & Johnson Construction Co. v. White, 5 Cir., 255 F. 2d 482.

■ There are, however, a number of defenses open to the one who allegedly owes the duty to indemnify. Acceptance of and payment for the subcontractor's work is one defense. D. M. Picton & Co. v. Eastes, supra, discusses this:

"In holding Picton liable to Superior for the damages it was condemned to pay for the injury to the Tramp, we are not overlooking Picton's right to claim exoneration upon proof that Superior knew that it had not completely performed the contract, and so knowing, had accepted what Picton did as full and complete performance. Picton does argue vigorously that just this occurred that Superior, knowing that some of the piles re-

mained unpulled, but satisfied with the performance of the contract, accepted it as fully performed, and Picton was thereby discharged from further performance and from liability from non-performance. The district judge, however, has, on evidence supporting the finding, found on these issues in favor of Superior. Picton admitted that the piling in question was one of those he contracted to remove and that he did not remove it. His excuse for not removing it is that he relied upon Superior to point out the piling to be removed and Superior did not do it, but this claim will not at all do. The contract contains no qualifying term, no limitation based on action or non-action of Superior in pointing out the pilings to be removed. The contract is general and absolute. It should have been performed as written.

"It is true that, as it was required to do when the contract was performed, Superior paid the amount the contract called for, but payment of the contract price is not a defense to its breach."

Nebraska Sheet Metal also claims that Busboom was guilty of an intentional wrong, or wrong of moral turpitude, or that they were engaged in a concerted action with Nebraska Sheet Metal, and that, for this reason, they may not be indemnified by Nebraska Sheet Metal.

Another defense, of course, would be that it was Busboom's failure to perform, not Nebraska Sheet Metal, which caused the plaintiff's injuries.

■ In this case, the court believes that there was actual and legal fraud practiced by Nebraska Sheet Metal. The specifications were not substantially complied with and this was concealed.

■ Nishnabotna Drainage District v. Lana Const. Co., supra, and Eastern Iowa Light and Power Cooperative v. McKenzie, 8 Cir., 296 F.2d 295 (8th Cir.), are cited for the point that the engineer's interpretation of the specifica-

tions should be final. However, the McKenzie case cited F. E. Marsh & Co. v. Light & Power Co., 196 Iowa 926, 195 N.W. 754, and noted that in Iowa the architect or engineer in charge cannot change the specifications in construing them and cannot accept inferior workmanship and materials. In the Marsh case, the Iowa court had held that substantial non-compliance with the specifications was always a defense to the claim that the architect had accepted the work. The court said an architect had no authority to accept such work. Although this case has never been cited in Iowa, it is still the Iowa law. It wasn't necessary to go that far in this case because the defects were concealed. At any rate, under no interpretation of the specifications could it be said that Nebraska Sheet Metal complied with the specifications in putting on the roof.

The requirements for actual fraud are well known in Iowa. See Carey v. Drake, 241 Iowa 1340, 44 N.W.2d 357; LaMasters v. Springer, 251 Iowa 69, 99 N.W.2d 300. All the elements necessary to find fraud in inducing acceptance of the roof are present. Nebraska Sheet Metal in their brief call attention to the letters, reports, and proposals by the architect and Busboom as to the cause of the leaks. These tend only to show how well the real cause, failure to comply with the specifications, was concealed. Nebraska Sheet Metal knew of this search for the cause of the leaks and falsely assured them that they had complied with the specifications.

There was no showing that the general contractor or his employees had knowledge of the fraud and failure to comply with the specifications by Nebraska Sheet Metal. There was never really any attempt to show at the trial that the general contractor had any knowledge of the defalcations of Nebraska Sheet Metal. The indication from the correspondence is that Busboom did not have any idea that it was the roof which was causing the leaks. The evidence was to the effect that he first thought it was the sky domes. It was not until

samples were taken from the roof that it was found that Nebraska Sheet Metal did not comply with the specifications and requirements of good workmanship.

It is concluded that there was no intentional wrong or any other action upon the part of the general contractor which prevents his surety from being indemnified by the subcontractor, Nebraska Sheet Metal.

Nebraska Sheet Metal claimed that the work had been accepted and that this should defeat recovery. This has been answered since the surety raised the same defense although did not plead it. The cases cited by the third-party defendant are: Granette Products Co. v. Neumann & Co., 208 Iowa 24, 221 N.W. 197; Nishnabotna Drainage District v. Lana Const. Co., supra; Eastern Iowa Light and Power Cooperative v. McKenzie, supra. These cases are distinguished because, in the present case, the specifications were not substantially complied with and there was not the good workmanship required by the contract. This was concealed. Also, there was fraud in inducing the payments and acceptance. These cases are readily distinguishable on this basis. The leaks were known, but the failures and fraud of Nebraska Sheet Metal were not known when the last payments were made. Also, there was no showing of any acceptance of the work by Busboom which would prevent his surety from being indemnified.

The roof work was completed by Nebraska Sheet Metal in about late summer of 1958. The roof leaked almost from the beginning but it leaked less in warm weather. It was discussed with all the parties involved. The school was falsely assured that it would be fixed and falsely assured that Nebraska Sheet Metal had properly done their work. Under these circumstances, the final payment being made did not prevent their recovery for damage caused by the then concealed defects in the roof.

Nebraska Sheet Metal claims it was the defects of Busboom which caused the damage. This relates to the sky

domes. It does appear that wooden curbs were put in and the specifications called for concrete. At most, this could have contributed only to the damage to the interior of the building. Clearly, the roof was defective and had to be replaced. The evidence showed that the wooden curbs were not a contributory cause to the damage to the interior of the building. The roof was defective, but the deck it was placed on was concrete. When the water permeated the roof, it came into the building around the sky dome openings. However, the wooden curbs did not contribute to this.

Nebraska Sheet Metal also raises their one year guarantee as a defense. There is no showing that plaintiff was a party to any such agreement and no legal reason raised as to how plaintiff could be bound by it. Plaintiff contracted with Busboom. Busboom subcontracted with Nebraska Sheet Metal. Of course, even this guarantee is breached because the roof leaked immediately, and the guarantee is to the effect that there will be no defects for one year. However, their reason for raising the guarantee as a defense is in the third paragraph which says:

"If this roofing or flashing be injured or altered in any respect at any time to such an extent that repairs will be necessary, then unless the repairs shall be done by or under the supervision of this contractor, the liability of this contractor, in respect to the roofing and flashing, shall thereafter cease."

■■■ The exhibits show Nebraska Sheet Metal agreed to put a 15 year Johns Manville roof on the building which complied with the plans and specifications of the architect. The agreement was concluded September 30, 1957. George Deas, Vice-President of Nebraska Sheet Metal at that time, sent a letter to Mr. Busboom thanking him for the agreement allowing them to construct the roof. There is no showing that the guarantee ever became part of that agreement or that Mr. Busboom ever became bound by the terms of the agreement. That guarantee was written a full year after the agreement by Nebraska Sheet Metal to build the roof, and in fact, after Nebraska Sheet Metal had finished putting the roof on the school. The court feels that neither Busboom nor the plaintiff assented to the terms of this alleged guarantee.

■■■ Nothing done in 1959 by Mr. Busboom damaged the roof. In 1960, Nebraska Sheet Metal refused to fix the defects causing the leak. By this time, it had become apparent that the sky domes were not the cause of the leaking. Plaintiff was left in no position to do anything but have an examination of the roof made to determine the defects and to have a new roof put on. In conclusion, neither the plaintiff nor Busboom were ever bound by the terms of the alleged guarantee, and the alleged guarantee was not breached until Nebraska Sheet Metal had itself refused to remedy the defects. Also it could not be used to cover up the fraud of Nebraska Sheet Metal.

■■■ United Pacific is also claiming that Nebraska Sheet Metal should indemnify them for their costs and a reasonable attorney's fee. The court feels that by reason of the decision in Rauch v. Senecal, 253 Iowa 487, 112 N.W.2d 886, United Pacific is not entitled to be so indemnified. United Pacific is the surety for Busboom, the general contractor. In the plaintiff's petition, misconduct on the part of Busboom was alleged such as would prevent indemnification for costs and attorney's fees. The Senecal case turned not upon what type of misconduct was proven against the third-party plaintiff seeking indemnification but rather it turned upon what the plaintiff alleged and the third-party plaintiff was defending against.

■■■ The court takes notice of the fact that the judgment for plaintiff in this case is for a sum less than $10,-000.00, even though $16,500.00 was alleged. This is a case in which the plaintiff started the case in the State court and it was removed to this court by the third-party plaintiff. Nebraska Sheet

Metal was then brought into the case. At the time the case was removed, the repair work had not yet been accomplished. It was some time after the removal date that the costs of repairs became definitely known. There is no question that the claim was for an amount in excess of $10,000.00 and that the removal was in good faith. The amount claimed controls in matters of jurisdiction if apparently made in good faith and it must appear to a legal certainty that the claim is really for less than the jurisdictional amount in order for the court's jurisdiction to be defective for that reason. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845. That court also held that events occurring subsequent to institution of suit in Federal court reducing the amount recoverable below statutory limit do not oust jurisdiction. That is the situation in this case. Several months after the case was removed was when it became known that the amout claimed would be about $9,-000.00. It is not clear here that the claim could not have been for over $10,000.00. In a removal case, there is a presumption that plaintiff did not claim for an amount in excess of $10,000.00 for jurisdictional reasons. Jurisdiction does not oust once it has validly attached.

Accordingly, judgment will be entered in favor of the plaintiff in the sum of $7,927.83 together with interest from and after October 12, 1961, and costs, and against United Pacific Insurance Company.

Further, judgment will be entered for United Pacific Insurance Company for this sum of $7,927.83 and against Nebraska Sheet Metal Contractors, Inc. and Nebraska Sheet Metal and Roofing Contractors together with such interest and costs as United Pacific Insurance Company is liable for to plaintiff.

The claim of United Pacific Insurance Company for recovery against Nebraska Sheet Metal Contractors, Inc. and Nebraska Sheet Metal and Roofing Contractors for attorney's fees and for their own costs in defending the plaintiff's claim and in prosecuting the cross-claim will be denied.

It is ordered that the foregoing shall constitute the findings of fact, conclusions of law, and Order for Judgment in this case. Rule 52(a) of the Federal Rules of Civil Procedure.