328 So.2d 899 (1976)
Dr. Eugene A. GARCIA
v.
HOLLYWOOD POOL CORPORATION.
No. 7324.
Court of Appeal of Louisiana, Fourth Circuit.
March 16, 1976.
Rehearing Denied April 13, 1976.
Writ Refused June 2, 1976.
*900 Malcolm A. Coco, Jr., Metairie, for plaintiff-appellee.
Jesse S. Guillot, John G. Lankford, New Orleans, for defendant-appellant.
Before LEMMON, GULOTTA and STOULIG, JJ.
STOULIG, Judge.
Plaintiff, Dr. Eugene A. Garcia, was awarded a judgment of $2,217.29 against defendant, Hollywood Pool Corporation,[1] representing the cost of having a defectively constructed swimming pool repaired. Conceding its responsibility to remedy faulty workmanship, defendant has limited this appeal to the question of how much or what type of remedial work plaintiff may demand.
Defendant contracted to install a swimming pool for $7,875, which its literature describes as an "* * * investment in fun, beauty, health * * *." Because of improper installation and/or defective materials, patches of plaster flaked away from the bottom of the pool causing unsightly cracks and discoloration almost immediately after it was tendered as complete. Only one expert pool repairman was called to testify. William Harper, who has been engaged in the pool construction business for more than 20 years, gave two separate repair estimates.[2]. He stated it could be repaired for $640.19 by fixing the leaks causing the plaster to work loose and then patching the cracks. He could not recommend this procedure because it would result in a noticeable discoloration which would in time become unsightly. To achieve color harmony, he said the entire pool should be replastered and gave an estimate of $2,067.29[3] to do the job.
Appellant argues the owner is entitled only to the cost of remedial work once the contract has been substantially performed and may not demand the entire job be redone. The cases cited in support of this position are inapposite because they do not involve the type of repairs where aesthetics are of any significance.[4] In this case, the appearance of the pool is a very important factor which is established by defendant's own literature. It is unreasonable to expect an owner to accept a functional pool *901 with unsightly patches and discolorations after investing $7,875 in its installation.
Any manifestation of poor workmanship or lack of quality in the materials furnished adversely and noticeably affecting the appearance of the pool constitutes a breach of the construction agreement, which renders the defendant liable for its repair in such sums as are necessary to make it conform with the representation contained in defendant's letter proposal that "* * * the owner's investment in a swimming pool is an investment in fun, beauty, health relaxation and togetherness." (Emphasis added.) Poche v. Landry, 57 So.2d 808 (La.App.Orl.1952). Under the terms of the contract, plaintiff is entitled not only to a basically well-constructed and functional swimming pool but one that is new in appearance and pleasing to the eye.
Finally, appellant argues plaintiff contractually bound himself to accept the patchwork after meeting with defendant's representatives in March, 1974 and wrote a letter to this effect. As we interpret the record on this point, in the light of plaintiff's testimony patchwork is acceptable only "if it [the pool] could have been made into a new like construction at that time." Even had the defendant attempted to perform the patchwork, it would not have been an acceptable fulfillment of the "alleged compromise," for it would have lacked the aesthetically satisfactory appearance of new construction. This result was later confirmed by the opinion of the expert, Mr. Harper.
Defendant cannot escape liability for the entire cost of replastering because it failed to perform the repair work that only would have been acceptable as a compromise had it been aesthetically satisfactory. Defendant made only perfunctory attempts to correct the substantial defects. Within a few days after the March meeting, defendant's workmen appeared to correct minor leaking problems and this they failed to do properly on their first call. When they returned a second time they succeeded in repairing most of the leaks; however nothing was done on the major complaint the defective and flaking plaster. There is a disagreement in the record as to how the replastering was to be scheduled. Defendant's representatives insist plaintiff was to have called them; plaintiff denies this. The trial court resolved the factual conflict against defendant and we see no reason to disturb this conclusion.
Included in the judgment was $150 for alleged expenditures plaintiff incurred to repair defendant's faulty workmanship. This aspect of the judgment is not supported by the record and accordingly it will be reduced by this amount.
For the reasons assigned, the judgment appealed from is amended to reduce it from $2,217.29 to $2,067.29, and, as amended, affirmed. Defendant is to pay all costs.
AMENDED AND AFFIRMED.
NOTES
[1] Defendant was awarded $358 on its reconventional demand, representing the balance due for a pool sweeper, which payment plaintiff admittedly withheld until some adjustment was made on his complaint. Plaintiff has not appealed or answered this appeal.
[2] Harper testified that in his opinion the cracks in the bottom of the pool were either the result of poor workmanship or defective materials.
[3] This is transposed in the transcript to read $2,607.29. A written quotation, which we accept, sets the price of $2,067.29.
[4] Wigginton v. Globe const. Co., 223 La. 695, 66 So.2d 613 (1953); Sarver v. Barksdale, 24 So.2d 649 (La.App. 1st Cir. 1946).