389 So.2d 1339 (1980)
AMERICAN EAGLE, INC.
v.
The EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LTD., et al.
No. 13501.
Court of Appeal of Louisiana, First Circuit.
July 7, 1980.
Rehearing Denied November 10, 1980.
*1340 Robert E. Leake, Jr., and T. Michael Masterson, New Orleans, for defendant and appellant The Employers' Liability Assurance Corp., Ltd.
Ted J. Borowski, Houma, for plaintiff and appellee American Eagle, Inc.
Frederick R. Bott, New Orleans, for third party defendant Maryland Cas. Co.
Kenneth Watkins, Houma, for third party plaintiff Marliwood Const. Co.
Robert L. Morris, Houma, for plaintiff.
Before COVINGTON, LOTTINGER and COLE, JJ.
COLE, Judge.
In 1966, appellant Marliwood Construction Co., Inc., agreed to build for appellee American Eagle, Inc., a building to house the American Bank & Trust Company of Houma. This suit arises out of certain defects in the exterior and interior wall paneling of that building.
Marliwood subcontracted the installation of the interior vinyl wall covering to Nathan Leathers. The contract between Marliwood and American Eagle originally called for use of an exterior paneling known as Alumaglass; after the contract was let, however, the specifications were changed to provide for a paneling designated as Lyn-Pan and manufactured exclusively by Construction Corporation Systems, Inc. Marliwood subcontracted the installation of the exterior paneling to Metropolitan South Construction Co., Inc. (Metso).
By the time the building was completed in 1968, defects in the interior and exterior wall paneling had begun to appear. American Eagle accepted the building, with reservation of its claims for the defective paneling, and sued Marliwood and its surety, Employers Liability Assurance Corp., Ltd. (ELAC). The latter two filed third party *1341 demands against Metso and its surety, and against Leathers. Metso's surety, Maryland Casualty, filed a reconventional demand against Marliwood and ELAC, claiming $6,000 in retainage allegedly due to Metso and assigned by Metso to Maryland Casualty. Maryland Casualty also filed a fourth party demand against Construction System.
The trial judge found the defects in the paneling were caused by improper storage at the job site and improper handling of the paneling while it was being transported to the job site and while it was being installed as part of the building. He rendered judgment in favor of American Eagle and against Marliwood and its surety in the amount of $75,607.04, and in favor of Marliwood and its surety against Metso's surety, Employers' Liability Assurance Corporation, in the amount of $38,495.65. No answers to the third and fourth party demands were filed by Metso, Leathers and Constructions Systems, and Marliwood and ELAC did not answer Maryland's reconventional demand. The record does not indicate that default judgments were taken against these defendants, and the claims against them were omitted from the final judgment. Appeal by Marliwood and its surety followed.

DISMISSAL FOR FAILURE TO PROSECUTE
Appellants urge that plaintiff-appellee's action should be dismissed as abandoned by the failure of any party to take any step in the prosecution or defense in the trial court for five years, pursuant to La.Code Civ.P. art. 561. The unusual setting in which this defense rests necessitates a brief discussion of the post-trial history of the action.
The case was tried on the merits on February 14-18, 1972. At the conclusion of the trial on the latter day, the following minute entry was made:
"The Court then directed that Briefs be submitted, and, after discussion, it was ordered that the transcript of oral testimony be given to counsel prior to the writing of such briefs. Counsel for plaintiff is to be allowed a delay of forty-five (45) days after receipt of the transcript within which to file his briefs, and thereafter, counsel for defendants are to be allowed a delay of forty-five (45) days (collectively) to file reply briefs.
"Further, with regard to the deposition of Charles Lynch, one of the witnesses herein, the ruling on which was made by this Court on February 17, 1972, counsel for the plaintiff is to be allowed a delay of fifteen (15) days from February 17, 1972, and counsel for defendants are to be allowed a delay of fifteen (15) days (collectively) to reply.
"The matter will then be taken under advisement by the Court." (Emphasis supplied.)
Thereafter, the court and the parties discovered that the court reporter who recorded the testimony during the trial was unable to transcribe the testimony.[1] After that reporter was discharged, the judge's secretary attempted to "re-construct" the testimony from the tapes and from the judge's trial notes. When this was only partially successful, the court, on December 30, 1976, issued an order calling for a post-trial conference for January 13, 1977. A subsequent order issued by the court on January 10, 1977, set the conference for February 2, 1977. After this conference, the aid of another court reporter in preparing the transcript was sought. Apparently the transcript was completed in 1978, because on September 1, 1978, another post-trial conference was held at which the parties were assigned new time schedules for post-trial briefing. On July 16, 1979, the judge rendered his reasons for judgment.
If the post-trial conference was a "step in the prosecution" by a party, the motion to dismiss the action as abandoned should be denied. The term "step in the *1342 prosecution" consistently has been defined by Louisiana courts as some formal action before the court intended to hasten the suit to judgment. DeClouet v. Kansas City Southern Railway Company, 176 So.2d 471 (La.App.3d Cir. 1965), writs denied 248 La. 383, 178 So.2d 662; Marchand v. Gene Thorpe Finance, Inc., 225 So.2d 485 (La. App. 4th Cir. 1969), writs denied 254 La. 848, 227 So.2d 592; Evergreen Plantation, Inc. v. Zunamon, 272 So.2d 414 (La.App.2d Cir. 1973), writ denied La., 274 So.2d 708; Melancon v. Wood, 303 So.2d 222 (La.App. 4th Cir. 1974). A post-trial conference whose purpose is to facilitate completion of a transcript so that briefs could be filed and a decision rendered most certainly is a "step in the prosecution" of the matter.
It is arguable, however, that a post-trial conference called by the judge is not a step taken by "the parties," and thus not sufficient to interrupt the five-year peremption provided by Article 561. We reject that argument. When the conference was called, it was a step in the prosecution or defense which inured to the benefit of all of the parties; to hold otherwise would produce the absurdity of requiring a party to make a formal motion for relief which already has been granted by the court. More importantly, however, the purpose of Article 561 is at war with such a contention. The article is not designed to dismiss actions on technicalities, but to dismiss actions which in fact have been abandoned. As Justice (then Judge) Lemmon observed in Kanuk v. Pohlmann, 388 So.2d 757 (La.App. 4th Cir. 1977), at 758:
"The purpose of the C.C.P. art. 561 is to dismiss actions which have been abandoned, and the article provides for dismissal of those cases in which a plaintiff's inaction during a legislatively ordained period has clearly demonstrated his abandonment of the case. The article was not intended, however, to dismiss those cases in which a plaintiff has clearly demonstrated before the court during the prescribed period that he does not intend to abandon the action." (Emphasis supplied.)
We note that the predecessor of article 561 (C.C. art. 3519) provided that an action was abandoned if no step in the prosecution was taken by plaintiff within five years. Article 561, however, expressly provides that a step by either party-plaintiff or defendant-will prevent abandonment. In the official revision comments to article 561, the drafters noted:
"This article treats the action as abandoned only if five years has elapsed without any steps being taken by any of the parties in the prosecution or defense thereof. This change was made to provide for the case where the defendant has taken some step in the defense of the action, but subsequently moves to have the action declared abandoned because the plaintiff has failed to take any step in the prosecution thereof for five years." (Emphasis by the drafters.)
It is obvious the intent of the legislature was that any formal step, taken by any person capable of so doing, would be sufficient to negate the inference that an action has been abandoned, and, accordingly, the peremption of article 561 is inapplicable. In light of this, the post-trial conference called by the judge clearly prevents a finding of abandonment.
Even if the post-trial conference did not constitute a step in the prosecution, the motion to dismiss on the grounds of abandonment should be denied. A well-recognized exception to the general rule of article 561 is that it does not apply where the failure to prosecute was caused by circumstances beyond the plaintiff's control. This exception was intended to and did survive the 1960 transfer of the principle of abandonment from the Civil Code to the Code of Civil Procedure.[2] If plaintiff did *1343 not have the power to hasten the matter to trial, then it is difficult to conclude his failure to do so was within his control. In the instant case, the plaintiff was caught in the lengthy, intolerable delay between trial and judgment in a non-jury case, a situation which has become all too familiar to attorneys.[3] Where the trial judge orders a transcript, with briefs to be filed after submission of the transcript, and the transcript is not submitted, and can not be submitted because of the death or other inability of the initial reporter to transcribe it, the matter is clearly outside the plaintiff's control. He can file a brief, but that filing would be premature and, in addition, he would be deprived of the purpose for which the court ordered the testimony be transcribed-the opportunity to cite and argue from the printed transcript. He does not have the option to substitute a written narrative of the testimony, as he perhaps could do on appeal.[4] Unable to rectify the situation, he should not be charged with its consequences.
LeBlanc v. Thibodaux, 162 So.2d 753 (La. App. 1st Cir.1964), upon which appellants rely, is distinguishable from the case at bar. In LaBlanc, the court ordered the filing of briefs, after which the matter would be considered as submitted; however, the plaintiff failed to file a brief for almost ten years. Plaintiff was not prevented from filing a brief, and thus his inaction was directly chargeable to him. In the instant case, plaintiff's brief was not due until after the transcript had been filed, and, due to an unusual set of circumstances, not of his making, the transcript was not filed until slightly more than five years had elapsed.
Similarly, the decision in Landry v. Dore, 149 So. 321 (La.App. 1st Cir. 1933), cited by appellants, is inapplicable. There, our predecessors on this Court noted:
"If the clerk was neglectful in the matter of transcribing the shorthand notes and filing the evidence, (plaintiff) should have invoked the power of the Court to compel him to act."
In this case, the clerk was not neglectful, but incapable of transcribing the testimony. Where the court reporter is dilatory, an attorney may seek the court's aid in compelling transcription. The matter properly may be said to be within counsel's control. In this case, because the court reporter was incapable of transcription, the court already was exercising its power to seek transcription from other sources. The matter was not within plaintiff's control, and the only remedy he could seek already was being pursued by the trial judge.
Even if the LaBlanc and Landry decisions were not distinguishable, we would have considerable doubt about their continuing force. They were decided during a period in which the law placed upon the party seeking relief the onus of getting the transcript prepared and filed; that approach is changing to one in which the onus is upon the clerk, as will appear from the 1978 amendments to the Code of Civil Procedure which relieve the appellant of any responsibility for the transcript, provided he pays the costs of preparation at a stated time. La.Code Civ.P. art. 2126.

*1344 PEREMPTORY EXCEPTION URGING NO RIGHT OF ACTION
Appellant ELAC has filed in this court the peremptory exception urging that plaintiff American Eagle has no right of action or want of interest. The thrust of the exception is that the work necessary to remedy the defects in the building were paid for by the American Bank & Trust Company of Houma, the tenant in the building, and not by American Eagle, the building's owner.
The applicable law is La.Civ.Code art. 2769, which provides:
"If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract."
The evidence establishes American Bank paid to replace paneling in the building constructed by defendants for American Eagle. Exceptors confuse the fact of loss with proof the loss was repaired by the building owner, or at its cost. We are aware of no law which requires, as a pre-requisite to recovery of the loss he has sustained through defective workmanship, the owner must establish he caused the repairs to be made, or he paid for the repairs. All that is necessary is that he prove the defects and the cost of repairing those defects. See, e. g., Popich v. Fidelity and Deposit Company of Maryland, 231 So.2d 604 (La.App. 4th Cir. 1970); Garcia v. Hollywood Pool Corporation, 328 So.2d 899 (La.App. 4th Cir. 1976), writs refused, La., 333 So.2d 237.[5] American Eagle has satisfied the burden by proving defects in the paneling, and the amount of money which was required to correct those defects. The fact that the repairs were paid by a third person would only be relevant to the exception if the payment was accompanied by a subrogation or assignment. See, e. g., La. Code Civ.P. arts. 697 and 698. In the absence of such proof, a holding that payment of the cost of repair by a third person bars the owner's recovery against the wrongdoer would be tantamount to a rejection of the principles which underly the "collateral source" rule, a rule well established in Louisiana.

THE MERITS
The remaining issue is whether the plaintiff-owner proved the existence of a defect in the building which was constructed for him by defendant Marliwood Construction Company, and whether it proved the defect was chargeable to Marliwood. No one seriously contests the trial court's finding that the paneling was defective, and the record contains overwhelming evidence on that point. Thus the only issue is whether the defective paneling is chargeable to Marliwood.
Marliwood and the other appellants contend La.R.S. 9:2771 applies and bars imposition of liability upon the contractors. That statute provides:
"No contractor shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this Section shall not be subject to waiver by the contractor."
Appellants contend the defective panels were supplied according to specifications *1345 furnished by the owners that the contractor did not "make or cause to be made," and the defect in the paneling was due to an insufficiency of the specifications. Appellant contractor clearly establishes validity of the first contention. The evidence reflects the disputed exterior paneling-Lyn-Pan-was selected by the architect and the owner after they examined similar paneling on a building in Jackson, Mississippi, and the architect issued a change order which required the purchase of this type of paneling from its only manufacturer.[6]
The second element-the cause of the defect-presents difficulty. There is evidence from which reasonable minds could conclude the defect was caused by a problem in the chemical process by which the basic panels-made of treated bagasse-were prepared by a manufacturer who supplied them to Construction Systems. If this were the cause of the deterioration of the panels, then defendant contractor would be absolved from responsibility by the terms of La.R.S. 9:2771.
However, there also is evidence-and the trial judge found-the deterioration was caused not by the basic chemical composition of the panels, but by the fact the panels were improperly cut, and became bowed in transportation to the construction site and in storage at the site, and by improper installation. If any of these were the cause, then La.R.S. 9:2771 is inapplicable.[7]
Under the dictates of Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), we must affirm the trial judge's decision unless it was "plainly wrong." The record contains strong evidence the panels were improperly cut, the panels were visibly bowed and defective when they reached the job site and when they were installed, and the initial caulking was improperly done. There is also strong evidence that any of these defects could have caused the damage which became manifest after the panels had been installed. The strongest counter-evidence is the testimony, by deposition, of Charles Lynch, who was the general manager of Construction Systems, the corporation which purchased the panel "core" from National Bagasse and produced the finished product which was shipped to the job site. Lynch testified positively the defect in the paneling was due to a change by National Bagasse in the chemical composition of some of the "core" panels, including many which were used in the American Eagle building. Appellants place much emphasis on this candid "confession" by the manufacturer. However, the strength of this testimony is weakened when one considers the other possible cause of the defects in the paneling-improper cutting and transportation-would be fault clearly attributable to Construction Systems, rather than to National Bagasse. Under all of the circumstances, we can not conclude the trial judge was plainly wrong in compelling Marliwood *1346 to pay the cost of repairing the defective paneling.
Appellants also contest the court's finding that the defects in certain interior vinyl wall paneling are chargeable to the contractor. In his reasons for judgment the trial judge did not discuss why he imposed liability upon the contractor. Our examination of the record discloses a finding that the defect in the paneling was caused by improper installation would not be "plainly wrong," and thus we affirm the award of damages for replacement of the paneling.
Appellants apparently take no issue with the other elements of damages awarded by the trial court.
Marliwood and ELAC sought indemnity against Maryland, Metso's surety; issue was joined, and the trial judge rendered judgment in favor of Marliwood and ELAC. Since the trial judge found defective installation caused the difficulty with the exterior paneling, and that finding was not plainly wrong, indemnification is proper, and that portion of the judgment is affirmed.
Issue was not joined as to the third and fourth party demands filed against Metso, Leathers and Construction Systems, and the reconventional demand of Maryland. The judgment below does not deal with these demands. Although principals of those parties testified at the trial, the record does not reflect they were represented by counsel. Under the circumstances, justice would best be served by a remand to permit the court to dispose of these demands. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by appellants.
AFFIRMED AND REMANDED.
NOTES
[1] The events surrounding the inability of the initial court reporter to transcribe the testimony, and the efforts of others to do so, do not appear in the record, but statements and exhibits to briefs filed in this court provide us with an understanding of those events. The factual assumptions which we make are in conformity with admissions made in their briefs by counsel for the parties to the litigation. See, e. g., LiRocchi v. Keen, 134 So.2d 893, 898 (La. 1961).
[2] The following excerpt from the official comments to article 561 reflects the continued viability of the "beyond his control" defense to the article's mandatory dismissal provisions:

"With respect to the exception to the rule of abandonment based on the defendant's waiver thereof, the point is moot under the above article, as the problem is solved by its broadened language `when the parties fail to take any steps in its prosecution or defense' for a period of five years. But the rationale of the three supreme court cases cited above necessarily reconciles the rule of Evans v. Hammer, [209 La. 442, 24 So.2d 814] supra, with earlier decisions recognizing that there should be no dismissal when the plaintiff's failure to prosecute was caused by circumstances beyond his control. See Note, 16 La.L.Rev. 199 (1955).
"When the court dismisses a suit on the ex parte motion of defendant and plaintiff's failure to prosecute is due to circumstances beyond his control, plaintiff should rule defendant into court to show cause why the ex parte dismissal should not be vacated, alleging that plaintiff's failure to prosecute was due to circumstances beyond his control. A similar procedure should be followed in a case where the court inadvertently dismisses the suit without noticing that defendant has taken a step in the defense of the suit within the previous five years." (Emphasis by the drafters.)
[3] The difficulties and injustices caused by situations similar to that which confronted plaintiff-appellee in the instant case apparently prompted the Supreme Court to promulgate a rule limiting the time within which a case may be held in abeyance while the trial transcript is prepared. See La.R.S. 13:4207.1.
[4] See, e. g., La.Code Civ.P. art. 2131.
[5] Appellant cites Holley v. Butler Furniture Co., 45 So.2d 747 (La. 1950), and Liner v. McEnery, 176 So.2d 786 (La.App.2d Cir. 1965), for the proposition a building owner has no standing to sue to recover for the cost of work performed on its building when the work was contracted and paid for by another. These cases are not remotely relevant; in each, the court held a plaintiff who had borrowed another's automobile did not have a right of action for damages to the automobile.
[6] Witnesses testified the change order was a "closed specification" which could only be met by Construction Systems, the manufacturer of the specific type of panel installed in the building.
[7] If the cause of the defect is the chemical composition of the product and the contractor is required, through "closed specifications," to use the product, the contractor should not be liable for the defect. If the cause is improper installation, of course, the contractor should be held liable. A more difficult question is that which is raised by the evidence in this case: the manufacturer, whose product is required through closed specifications, delivers defective materials to the job site, and the contractor knows or should know of the defect. Does this constitute "fault ... of the . . . specifications?" The court is of the opinion that Section 2771 is designed to insulate the contractor from liability for defects in materials required by the owner to be used when the contractor does not know or should not discover any defect therein, such as where the chemical attributes of the materials make them defective. In such cases, the owner fairly may be said to be relying upon the skill of the architect or the manufacturer of the materials. Where the defect is obvious to the contractor, however, and he nevertheless attempts to "make do" with what has been delivered, the owner may be said to then be relying upon the contractor's skill. Thus the contractor's acceptance of obviously bowed and improperly cut panels and his attempt to construct the building with them takes the situation out of Section 2771, i. e., where the owner is relying upon the manufacturer and architect and not the contractor.