KLIEBERT, Judge.
This is an appeal by Independent Towing Company, Inc., (Independent) from a judgment dismissing its suit against Main Iron Works, Inc. (Main) for damages to an engine which burned when the lubricating oil ran out of the port engine of a twin engine tug constructed by Main for Independent in accordance with plans and specifications supplied by Independent. We affirm.
The specifications called for the tugboat to be powered by two (2) Model G.M. 16V92 Series engines manufactured by General Motors Corporation. Main acquired the specified engines from George Engine *1010 Company (George). The engines were fitted with electrical and mechanical devices to monitor the oil pressure and cooling water temperature of the engines. The engines and their appurtenances were supplied by George and mounted on the tug by Main.
Shortly after the boat was delivered to Main the electric sensors which recorded the oil pressure and water temperatures began malfunctioning; i.e., triggering the alarm to indicate low oil pressure or high temperature, when in fact there was nothing wrong. George and Independent made several efforts to correct the problem and found the gauges used in this tug, as well as a substantial number of electric gauges George had in stock, were defective. Main decided to change from a combination electrical and mechanical system to an all mechanical system. George supplied the materials and Main the labor necessary to make the conversion free of charge to Independent.
Approximately three weeks after the work was performed the port engine lost oil pressure, stopped running and “froze up.” On investigation, the boat crew learned an electric sensor, mounted on the port engine had separated from a tee connection screwed into the engine block, thus allowing the lubricating oil to drain out of the engine. Subsequently, from an inspection by employees of George, made at Independent’s request, they learned the port engine had burned up from overheating and lack of lubrication when it ran out of oil while it was being operated.
Some three years later, Independent filed suit against Main and George seeking damages for the repair of the engine and the-loss of operating revenues which would have been earned by the vessel during the repair period. Exceptions of prescription filed by George were maintained, thus dismissing George from the main demand and also dismissing a third party petition filed against it by Main. No appeal was taken from this dismissal, hence, George is no longer a party to the suit. In the trial court and here Independent urges several theories as to its right to recover from Main, i.e., breach of contract, breach of warranty, strict liability or negligence.
Under La.R.S. 9:2771, a contractor is insulated from liability for defects in the materials specified by the owner to be used in the construction when the contractor does not know or is not expected to discover the defect. American Eagle, Inc. v. Employer’s Liability Assurance Corp, Ltd., 389 So.2d 1339 (1st Cir.1980). Therefore, in the absence of an actual or an implied warranty of the materials used in the performance of the contract, in order for the owner to recover from the contractor for defective material specified for use in the construction by the owner, the owner must prove want of skill or lack of care in the performance of the work because strict liability does not apply. Tiger Well Service v. Kemball Production Co., 343 So.2d 1153 (3rd Cir.1977).
According to the testimony of Mr. Molaison, President of Main, an oral six month warranty on workmanship was given by Main to Independent at the time of contracting to build the vessel. There was no warranty as to labor. Since more than six months had expired from the construction of the vessel to the time suit was filed, for Independent to recover from Main, it must prove want of skill or lack of care in the performance of the work by Main. This burden can be met by the introduction of direct or circumstantial evidence. A & M Pest Control Services v. FEJTA Construction Co., 338 So.2d 946, 949 (4th Cir.1976); Town of Slidell v. Temple, 164 So.2d 276 (La.1964).
The fact the engine burned up because it was operated without lubricating oil is not disputed. Further, it was generally accepted that the lack of lubricating oil was caused by the separation of the electric sensor from the tee. There was no direct testimony as to who failed to tighten the electric sensor. Rather, Independent sought to prove Main was responsible for, but failed to tighten the electric sensor by circumstantial evidence. Thus, although *1011 Independent did not have to negate all other possible causes, in order to succeed in its action it must exclude all other reasonable hypothesis as to the cause.
Since the threads on the electric sensor were tapered (as opposed to flat or pipe threads), once tightened, it was unlikely the cause of its separation from the tee would be excessive vibration. Hence, although urged, there was no real effort made to show the separation was caused from excessive vibrations of the engine. Rather, the effort of Independent was to show Main improperly mounted the electric sensor, initially or during the conversion, of the oil and cooling water monitoring system to an all electric one. Whereas, Main contended the electric sensor was mounted by George and it was unnecessary for its employees to touch the mount in completing the conversion. Thus, the crux of the factual issue here was how the oil pressure monitoring devices were mounted on the engine. There was some conflict by members of the boar crew and of Main’s employees as to exactly how the sensors were mounted. The boat captain and his mate testified the electric sensor was originally screwed directly into the engine block, but following the conversion to an all mechanical system the electric sensor was mounted into one end of the tee which had been screwed into the engine block, thus implying Main’s employees had failed to tighten the electric sensor when they made the conversion.
Mr. Molaison, who had grown up in the business, testified the oil pressure was monitored and reflected on gauges in two places; i.e., in the boat house and in the pilot house. Originally the information recorded by an electric sensor was transmitted to the pilot house by electric wires. At the same time mechanical gauges were mounted in the engine room. Mechanical gauges required the actual transmission of the lubricating oil to the mechanical gauges.
Although he had some initial doubt, after reviewing his files and the plans, he testified he was now sure that when the engine was received from George there was screwed into the engine a street tee with one end of the cross of the tee having an electric sensor and the other end having a hose which transmitted the lubricating oil to a mechanical gauge mounted in the engine room. Therefore, in converting the monitoring system from electrical and mechanical to all mechanical it was only necessary to run copper tubing from the tee to the mechanical gauges mounted in the engine room and in the power house. There was thus no need for Main’s employees to touch the electric sensor.
Although the trial judge concluded Independent had proven the cause of the damage to the engine (the separation of the electric sensor from the tee), from the evidence he concluded at least three groups, i.e., employees of Independent, George or Main could have caused the separation, hence, Independent had not met its burden of proof. Independent’s employees and George’s employees had worked on the monitoring devices when the system was malfunctioning and the testimony of Mr. Molaison was not seriously contradicted, hence, we cannot say the trial judge erred when he made these conclusions.
Accordingly, the judgment of the trial court is affirmed. The appellant to pay all costs.
AFFIRMED.